THE LAKE KOEN NAVIGATION, RESERVOIR AND IRRIGATION COMPANY v. J. J. KLEIN.

No. 12,599. (65 Pac. 684.)

SYLLABUS BY THE COURT.

1. EMINENT DOMAIN — *Exercise for Public Use.* It rests with the courts to decide what is a public use, for the promotion of which the legislature is authorized to confer the power of eminent domain, and with the legislature to determine when this power may be exercised, and the character, quality, method and extent of such exercise.

2. ———— *Irrigation.* Irrigation in this state is a public use, for the promotion of which the legislature may authorize a private person or corporation to exercise the power of eminent domain.

3. ———— *Act of 1891.* Whether chapter 133, Laws of 1891 (Gen. Stat. 1901, §§ 3627–3721), conferred such power to be exercised east of the ninety-ninth meridian, is a query.

4. ———— *Acts of 1899 Construed.* Such power is conferred by chapter 151, and by section 1, chapter 95, Laws of 1899 (Gen. Stat. 1901, §§ 1366, 3758). The power therein conferred is not taken away by either section 1367 or section 1368, General Statutes of 1901, or by both together.

5. ———— *Subsequent Regulation by Legislature.* A private person or corporation receiving and exercising the power of eminent domain for the promotion of a public use is liable to respond to all reasonable regulations in the matter of the administration of such public use which the legislature shall thereafter prescribe.

6. ———— *Purposes of Private Corporations.* The fact that the charter powers of a private corporation embrace both private purposes and public uses does not deprive such corporation of the right to exercise the power of eminent domain in the promotion of such public use.

7. ———— *Cases Distinguished.* The case of *The State, ex rel., v. Osawkie Township*, 14 Kan. 419, and *C. B. U. P. Rld. Co. v. Smith, Treasurer, etc.*, 23 id. 746, distinguished.

Error from Barton district court ; ANSEL R. CLARK, judge.    Opinion filed July 6, 1901.    Division two. Reversed.

### STATEMENT.

THE Lake Koen Navigation, Reservoir and Irrigation Company is a corporation organized under the general laws of the state of Kansas.   The purposes for which it was organized are set forth in its charter as follows :

"The accumulation, storage and conservation of storm, flood and seepage waters and the supply of water to the public ; to manufacture and supply light and heat to the public ; the construction and maintenance of dams and canals and reservoirs for the purpose of water-works, irrigation, navigation and manufacturing purposes ; and, also, to have and exercise each and all the powers referred to and conferred on canal corporations for the purpose of irrigation under the laws of the state of Kansas, and to acquire and hold all real estate and property necessary to construct and maintain such dams, canals and reservoirs from a point in the Arkansas river near Pawnee Rock, Kan., on the north side of said stream, thence in a northerly direction through Barton county, Kansas, to and including what is known as the 'Cheyenne bottoms,' which 'bottoms' are to be converted into a lake, to be called 'Lake Koen' ; and to acquire and hold all necessary property to construct and maintain ditches, dams and canals to and from said lake."

In pursuance of such objects, it has already acquired the right to construct a canal from a point near Pawnee Rock in a northerly direction some eight or ten miles to the "Cheyenne bottoms," a tract of land of comparatively small value, forming a natural basin. For the purpose of acquiring land in these bottoms

upon which to accumulate waters to be discharged from this canal, and thus to form a reservoir or lake, it instituted condemnation proceedings in the manner pointed out in the statute for the condemnation of lands for railroad and other purposes. Its application to the judge of the district court for the appointment of commissioners for this purpose was as follows :

"The Lake Koen Navigation, Reservoir and Irrigation Company respectfully represents unto your honor that it is a duly chartered and organized corporation, and authorized under the laws of Kansas to construct, operate and maintain irrigation ditches, lakes and reservoirs in and through the county of Barton, in the state of Kansas ; that it is necessary for the proper construction, operation and maintenance of such ditches, lakes, and reservoirs, as located in said county, to acquire for the said purposes certain lands for said ditches, lakes and reservoirs in said county."

The commissioners were appointed, made their condemnation and reported to the court, from which defendant in error appealed to the district court of Barton county, filing his proper petition therein, to which plaintiff in error answered. After the issues were thus formed, defendant in error filed his motion to quash the condemnation proceedings and declare the same null and void, on the following grounds :

"1. That said alleged condemnation proceedings are null, void, and of no effect.

"2. That there is no law under which plaintiff's said land, or any interest or easement, can be taken or appropriated, against plaintiff's will, for the purpose for which said land is sought to be appropriated. (See charter of said defendant corporation, a copy of which is hereto attached marked 'Exhibit A.')

"3. That the purpose for which said land, or an easement therein, is sought to be taken under said alleged condemnation is for private purposes and not for public uses.

"4. That the alleged laws under which said pretended condemnation proceedings were had were and are unconstitutional and void.

"5. That said chapters 95 and 151 of the Session Laws of Kansas for 1899 were and are unconstitutional and void.

"6. That the proceedings in this alleged condemnation proceeding are illegal and void, and contrary to the general irrigation laws of the state of Kansas, chapter 52a, page 732, in the Statutes of Kansas (Dassler), 1899." (Gen. Stat. 1901, §§ 3607–3758.)

This motion was sustained, and plaintiff in error brings the case here. The questions presented, in brief, are:

*First.* Is irrigation in Kansas such public use that the power of eminent domain may be invoked for its promotion?

*Second.* Has the legislature by statute authorized the exercise of the power of eminent domain therefor?

*Third.* Does the fact that purposes other than those of a public character are found in the charter of plaintiff in error destroy its right to exercise the power of eminent domain in the promotion of the public uses authorized therein?

*Fourth.* Does the object as specified in its application for the appointment of commissioners to make condemnation control as to the purpose of such proceedings, or do the objects of its creation as found in its charter control?

*Trimble & Braley, Osmond & Cole,* and *John A. Eaton,* for plaintiff in error.

*Nimocks & Schwartz, C. F. Foley,* and *Sam'l Jones,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: It is a basic principle of our form of government that no person can be deprived of life, liberty or property except by due process of law. It is equally fundamental that the legislature possesses no power to take the property of any one and give it to another for the advancement of simply private objects. To argue these propositions or state authorities in their support would be but a pedantic display of learning. It is equally well settled that the legislature may authorize the taking of private property by private persons or corporations for public uses, the owner of such property being compensated therefor. Courts determine what is a public use; legislatures, when the power of eminent domain may be exercised in its promotion. Courts may not interfere to limit or control the discretion of the lawmaking power as to the character, quality, method or extent of the exercise of the power of eminent domain by a private person or corporation engaged in the promotion of a public use, when once it has been determined that such use *is* a public one. This being so, they should be careful in pronouncing upon the question as to whether a given project is such a public use as to permit the exercise of the power of eminent domain in its promotion.

1. Relative powers of courts and legislature.

We are met at the threshold of the inquiry in hand with the question as to whether, under the conditions existing in this state, irrigation is such a public purpose as to warrant the permission of the exercise of the power of eminent domain for its accomplishment. After careful consideration, we answer this question in the affirmative. Agriculture is by far the most important of our industries.

2. Irrigation a public use.

It engages the attention of a very large part of our people. In it a vast amount of capital is employed. Heretofore a scarcity of moisture when most needed for the growth of crops has been a thing most dreaded by our farmers. This has been true in the western portion to a greater degree than in the eastern, but in all portions of the state has this been true to a greater or less extent. Any scheme which has as its legitimate purpose the alleviation of these conditions is of general use and benefit. It is not necessary that all portions of the state be equally benefited by a given enterprise to constitute it a public use, or even all persons living within the limited area to which its operations are confined. All that is necessary is that the use and benefit be common to all within the designated area, not to particular individuals or estates.

It is a very difficult matter to define what is a public use. Courts of last resort have departed quite widely from one another in the effort. The local conditions and needs of the people have much to do with the question. Wet countries need ditches and dikes, dry countries irrigation. Yet necessity is not definitive of a public use. Without attempting a definition, we may state that we find no difficulty in coming to the conclusion that the promotion of irrigation in this state is a public use, and that the legislature is authorized in its discretion to commit the power of eminent domain to private persons or corporations for its promotion. Indeed, we understand that there is no serious contention by either party as to the correctness of this conclusion, and we have made these remarks more by way of inducement than demonstration.

Has the legislature exercised this right, and has it

3. Act of 1891— query.

authorized the use of the power of eminent domain for the accomplishment of

irrigation purposes?  All the parties answer this question in the affirmative as to all the territory west of the ninety-ninth meridian.  Chapter 133, Laws of 1891 (Gen. Stat. 1901, § 3627–3731), clearly shows this to be a fact.  The act is entitled:

"An act providing for and regulating the diversion, appropriation, storage, and distribution of waters for industrial purposes within prescribed limits and of the construction, maintenance and operation of works therefor," etc.

It is an elaborately wrought out act, divided into many articles, and evidently designed to cover the entire range of questions likely to arise out of the irrigation problem.  Its first section, by its terms, applies only to that portion of the state west of the ninety-ninth meridian.  At least two other of the sections refer to these limits, two or more specifically apply to the entire state, and several inferentially so apply.  It is a hard matter to reconcile this act, the one part with the other, and we are left in doubt whether articles 2 and 3, being the ones authorizing the exercise of the power of eminent domain for condemning lands for irrigation purposes, are to be applied to the entire state, or only to the western part. We are inclined to take the former view, but, without so deciding, we pass to the consideration of other statutes.

Section 1, chapter 151, Laws of 1899 (Gen. Stat. 1901, § 3758), reads as follows:

"Any irrigation, canal or reservoir company, for the purpose of establishing any reservoir, lake or pond
4. Acts of 1899 construed.  for the storage of water, shall have the right to condemn lands in the same manner as is provided for the condemnation of lands for railroad and other purposes."

The material portion of section 1, chapter 95, Laws of 1899 (Gen. Stat. 1901, § 1366), is as follows:

"Lands may be appropriated for the use of ` . . . irrigating . . . corporations . . . in the same manner as is provided in this article for railway corporations, so far as applicable; and any . . . irrigating . . . company . . . desiring the right to dam or take water from any stream, to conduct water in canals or raceways or pipes, . . . may obtain such right or right of way for all necessary canals, raceways, pipes, . . . in manner as aforesaid."

This last section was enacted as an amendment to the general corporation law and must be construed in connection therewith. It took effect May 15, 1899. Chapter 151 took effect April 6 of that year. These two acts are, on their face, confessedly applicable to the entire state, and would seem to provide both for condemnation of lands for canals or raceways and for reservoirs for the storage of water. These sections undoubtedly bestow upon plaintiff in error abundant authority for the exercise of the power of eminent domain to accomplish its irrigation purposes. The defendant in error, however, claims that these acts do not have this effect, for the reason that a public use must be necessarily under the public direction; that to withdraw any use from the public direction and control necessarily destroys its character as a public use, and upon these premises bases his argument that, because other portions of the general corporation law give to any irrigation company the right to furnish water to whom it may choose, and to refuse to furnish to whom it may choose, the character of such company as a public factor is destroyed, and is therefore ousted of the right of the exercise of eminent domain given it by the sections we have quoted. The

sections which defendant in error cites as accomplishing this are as follows :

"That any . . . irrigating company . . . may furnish, sell, let, or lease, for such time as such corporation may determine, any portion of its water or power . . . to any person or persons or corporation or partnership who may wish to use the same." (Laws 1899, ch. 95, § 2; Gen. Stat. 1901, § 1367.)

"Every canal corporation, for the purpose of irrigation, shall, in addition to the powers heretofore conferred, have power: . . . Fifth, to furnish water for irrigation at such rates as such organization or corporation may by its by-laws and regulations prescribe." (Gen. Stat. 1901, § 1368.)

The argument is that, inasmuch as under these provisions any irrigation company may furnish water to those whom it chooses and refuse to furnish whom it chooses, and to charge such rates as it may prescribe, it is entirely independent of any public control by legislature or courts, and hence, that while the purpose of irrigation may be inherently a public use such as would authorize the exercise of the power of eminent domain, yet, the legislature having accompanied the right of such exercise with these characteristics of a purely private purpose, such irrigation company is thereby ousted of its public character. In the first place, we hardly think that section 1367 will bear the interpretation placed on it by the defendant in error. The authority there granted is to do the act therein named, to wit, to furnish water, etc., in such manner as the corporation may determine, to any one wishing it, and not an authority to determine to whom it will furnish it. It is an authority to do, and not to limit the doing.

But admitting that section 1367 is what defendant

in error claims for it, and admitting that section 1368
confers on any irrigation company the
unqualified power to fix rates, do these
sections then serve to produce the re-
sults claimed? The words "public use," *ex vi ter-
mini*, imply that the public is interested therein, and
that in its sovereign organization and capacity the
public retains the right of regulation and control, at
least in a limited or qualified degree, over the exer-
cise of any corporate power or function granted in the
accomplishment of such public use; and we are free
to say that, if we are held to consider the language of
these sections as giving an unqualified right to the
irrigation company to fix its charges for the use of
water supplied by it, and determine whom its cus-
tomers shall or shall not be, such action on the
part of one legislature would not bind future ones;
that irrigation being, as we have already decided, a
public use, the public may not be forever foreclosed
and bound upon the question of such details by the
action of any legislature; and especially is this true in
view of the control over all corporations which sec-
tion 1, article 12, of the constitution, vests in the legis-
lature. The facts that the legislature has bestowed
the power of eminent domain upon irrigation com-
panies, and that they have availed themselves of such
right for the promotion of that object, render such
companies liable to respond to all reasonable regula-
tions in the matter of supply and rates as the legisla-
ture may thereafter impose, or courts fix in proper
cases.

In view of this, we cannot assent to the proposition
of defendant in error, that the bestowal of the right of
eminent domain by the legislature in 1899 was im-
mediately taken away by virtue of the prior pro-

*5. Subsequent regu-
lation by legis-
lature.*

visions quoted, but must hold that, if there is any conflict between them, the last act is of superior force; but we doubt if there is any conflict. Section 1368 authorizes any irrigation company to fix the rates for water furnished; but there must be read into that provision the further clause that such rates must be reasonable and just, inasmuch as we have already seen that such irrigation companies, by reason of the fact that they are a public use, are under legislative and judicial control. It is also held by many authorities that irrigation companies authorized to carry water for hire are *quasi*-public carriers, and as such are under the same rules as to the regulation of rates as other public carriers. (Long, Irrig. § 130; *San Diego Flume Co. v. Souther*, 32 C. C. A. 5481, 90 Fed. 164; *Merrill v. Southside Irrigation Co.*, 112 Cal. 426, 44 Pac. 720; *Wheeler v. Northern Colorado I. Co.*, 10 Colo. 582, 17 Pac. 487; *Prescott Irrigation Co. v. Flathers*, 20 Wash. 454, 55 Pac. 635; *Ind. Ditch Co. v. Agr. Ditch Co.*, 22 Colo. 513, 45 Pac. 444; *White v. Highline Canal Co.*, 22 id. 191, 43 Pac. 1028.)

In view of the fact that the legislature of Kansas has in so many ways recognized the principle of irrigation and bestowed upon companies organized for that purpose so many rights, we cannot hold that sections 1367 and 1368 take away from such companies all their characteristic rights as promoters of a public use. If said sections are antagonistic at all to those provisions of the statute conferring the power of eminent domain, which we doubt, they must be overthrown by the latter, rather than that the latter should be overthrown by the former.

Both private purposes and public uses are set out in the charter of plaintiff in error as being the objects of its creation. Does this fact render it incapa-

6, 7. Public and private purposes of corporations—cases distingished. ble of the exercise of the power of eminent domain for the promotion of such public uses? Counsel for defendant in error insist that this is the result, and cite several cases from this court to sustain that contention. They insist that the two purposes, public and private, are so blended that the private purpose drags down the public one and, as it were, ousts the plaintiff in error from its exercise. Much stress is laid on the case of *C. B. U. P. Rld. Co. v. Smith, Treasurer*, etc., 23 Kan. 746, and the claim is made that it settles the law in accordance with their view. We do not so read it. The legislature had authorized the voting of bonds in aid of the Irving Manufacturing Company. The purpose of this company as set out in its charter was "to purchase all needed lands, and construct, and maintain a dam across the Big Blue river, within two miles of Irving, and build and maintain mills and their machinery for manufacturing purposes." Bonds were voted in aid of this company, and the action was for the purpose of enjoining the collection of the tax to pay interest thereon. The court says, and most properly, that "it is a private corporation which is sought to be aided; it is a private benefit which is sought to be secured. Obviously the purpose was a private and not a public use." There are some detached portions of the opinion which, read alone, support the contention of the defendant in error; but we must not so interpret them, for the fact remains that in this case the corporation for whose benefit the bonds were voted was one organized for the promotion of a purely private purpose, and that only; and the court simply held that, because the company had gone on and erected a grist-mill, which was a *quasi*-public

use, it would not thereby become such a corporation promoting a public use as could be legally aided by the sovereign power of taxation. In other words, to use the language of the opinion, "the legislature cannot validate bonds for private purposes by declaring that the authorities may apply an indefinite portion of the proceeds to some public purpose."

The case of *The State, ex rel., v. Osawkee Township*, 14 Kan. 419, is also cited. In this case the issuance of bonds which the legislature had authorized to be issued for relief purposes was sought to be enjoined. By reference to this entire act, the court ascertained that the aid to be afforded by such bonds was to those, who, by recent crop reverses, had insufficient supplies of grain for feeding and seeding purposes. This the court held not to be a public purpose. Here again isolated excerpts from the opinion might be held to support the contention of counsel, but the entire opinion does not. Other Kansas cases are cited, but none supporting the contention of defendant in error in this respect.

It is contended with earnestness that cases refusing the aid of taxation in support of enterprises because the same are not public uses support the argument that like enterprises may not have the aid of the power of eminent domain. On the other hand, it is contended that the two principles are not analogous, for the reason that in the exercise of the power of eminent domain nothing is taken away from the owner of the property; that he is fully compensated before he can be deprived of his property, and cases are cited in support of this contention. Without deciding this question, the writer of this opinion is inclined to the former view. The theory on which all taxation is sustained is that an adequate return is

made in good government. Granting this view, no controlling decisions are cited.

There is no question but that, if a private use is combined with a public one in such way that the two could not be separated, the right of eminent domain may not be invoked to aid the joint enterprise. We mean by this that the two purposes must together exist as main, or principal, ones; but where the private purpose is simply an incident, and the public use the principal, then the incident will not destroy or defeat the principal. That boats may be sailed upon an irrigation reservoir, or that fish may live therein, does not destroy or interfere with its use for irrigation. What is the principal, and what the incident, might in some cases become a question of fact, to be determined by the proper triers of questions of fact. It has even been held that, in determining whether the proposed use was public or private, courts are not confined to the description of the objects and purposes of the corporation as set forth in its articles of incorporation, but may resort to evidence *aliunde* showing the actual business proposed to be conducted by it. (*B. V. L. Co. v. Johnson*, 30 Ore. 205, 46 Pac. 790, 60 Am. St. 818; *Matter of Niagara Falls & Whirlpool R. Co.*, 108 N. Y. 375, 15 N. E. 429.)

We see no greater reason for denying to a private corporation the power of eminent domain for the promotion of a public use, because by its charter it is also authorized to engage in a private enterprise, than to deny to a private person the same power because he is inherently endowed with the same authority. The question in either case is, What is the nature of the enterprise being aided?

In this case, it will be observed that the application which was filed with the district judge for the ap-

32—63 KAN.

pointment of commissioners in the condemnation proceedings stated that the object for which the lands were desired to be condemned was "to construct, operate and maintain irrigation ditches, lakes, and reservoirs," and it was for this purpose, and this only, that the lands were condemned. We may not assume in the face of this that the plaintiff in error was intending to do otherwise; that this proceeding was merely a subterfuge. This purpose was a proper public use, for the advancement of which the power of eminent domain could be exercised, and its exercise was not ousted simply because plaintiff in error under its charter might, under proper circumstances, engage in enterprises of a private nature. If, after these proceedings had ripened, it should proceed to devote the condemned property to a use other than that for which it was condemned— primarily and not incidentally— it could, beyond question, be ousted of a possession which it had obtained by fraud and which it was using for an unauthorized purpose.

We think we have disposed of all the questions presented in the record; and, from this discussion and the conclusions reached, it follows that the court below erred in sustaining the motion of defendant in error to quash the condemnation proceedings.

That action will be reversed, and this cause remanded with instructions to overrule the motion.

SMITH; ELLIS, JJ., concurring.