[No. 5983.   Decided May 19, 1906.]

THE STATE OF WASHINGTON, *on the Relation of Marian E. Harlan, Plaintiff*, v. CENTRALIA-CHEHALIS ELECTRIC RAILWAY & POWER COMPANY, *Respondent*.[1]

EMINENT DOMAIN—BY STREET RAILWAY FOR POWER PURPOSES— RIGHT—NECESSITY OF ANTECEDENT FRANCHISE. Upon a proceeding by a street railway company to condemn land for the purpose of creating the necessary power to operate a street railway system, it is not necessary to show, that the company has acquired all its right of way or obtained all franchises from the cities in which it expects to operate, where it appears that it was proceeding diligently to secure right of way and franchises which had been practically agreed upon.

SAME—CONDEMNATION FOR PUBLIC USES BY CORPORATION ORGANIZED FOR PUBLIC AND PRIVATE PURPOSES. A street railway company, organized for purposes partly private and partly public, may acquire land by the right of eminent domain where the proceedings show that the power is exercised only for its use as a common carrier, and which are not so combined with its private purposes as to be inseparable.

[1] Reported in 85 Pac. 344.

SAME—RIGHT TO CONDEMN—POSSIBILITY OF DIVERSION TO PRIVATE
USE. The prevention of the diversion to private uses of private
property taken for a public use, rests in the supervisory power of
the state rather than in the denial of the exercise of the right of
eminent domain.

SAME—PUBLIC NECESSITY—EVIDENCE—SUFFICIENCY. The uncon-
tradicted testimony of the president of a street railway company to
the effect that all the power that could be developed by a proposed
dam would be required for the uses of the company is sufficient
proof that there was a necessity for the taking of the land sought.

SAME—PUBLIC USE—CREATION OF POWER FOR USE OF STREET RAIL-
WAY. Under Laws 1903, p. 366, authorizing street railway com-
panies to condemn land for right of way "and other corporate pur-
poses," a street railway company may condemn land not adjacent to
its right of way, for the purpose of developing a water power to
create the power for the system, the public being directly interested
in such use as a means of acquiring cheap transportation.

Certiorari to review an order of the superior court for
Lewis county, Rice, J., entered November 20, 1905, after a
hearing on the merits, adjudging a public use and directing
the assessment of damages in a condemnation proceeding.
Affirmed.

*H. S. Elliott* and *E. M. Green,* for relator, contended, *inter
alia,* that franchises are necessary to constitute the railway a
public benefit. Without them there is no public use and the
right of eminent domain will not attach. *Healy Lum. Co. v.
Morris,* 33 Wash. 490, 74 Pac. 681; *State ex rel. Tacoma
Ind. Co. v. White River Power Co.,* 39 Wash. 648, 82 Pac.
150. Electric railroads cannot condemn lands at a distance
from their contemplated line, for power purposes, the legis-
lature having by statute placed them in the position, in that
respect of steam railroads, which are limited to adjacent lands.
Laws 1903, p. 364, § 2; Id., p. 383, chapter 180; Bal. Code,
§ 4334. The intention of the legislature should control.
*Howlett v. Cheetham,* 17 Wash. 626, 50 Pac. 522. Condem-
nation statutes being in derogation of common right, must
be strictly construed. *State ex rel. Attorney General v.
Superior Court,* 36 Wash. 381, 78 Pac. 1011; *Matter of*

*Water Com'rs of Amsterdam,* 96 N. Y. 351; *Miami Coal Co. v. Wigton,* 19 Ohio St. 560.   Condemnation for power purposes is not for a public use; it is a matter of internal economy, of interest only to the corporation.   *In re Rhode Island Suburban R. Co.,* 22 R. I. 457, 48 Atl. 591, 52 L. R. A. 879; *Pittsburg etc. R. Co. v. Benwood Iron-Works,* 31 W. Va. 710, 8 S. E. 453, 2 L. R. A. 680; *Avery v. Vermont Elec. Co.,* 75 Vt. 235, 54 Atl. 179, 98 Am. St. 818, 59 L. R. A. 817.

*W. W. Langhorne,* for respondent, contended, among other things, that the writ should be quashed for the reason that the application does not sufficiently show in what manner the lower court exceeded its jurisdiction.   Bal. Code, § 5749; *Seattle etc. R. Co. v. Bellingham Bay etc. R. Co.,* 29 Wash. 491, 69 Pac. 1107; *State ex rel. Townsend Gas etc. Co. v. Superior Court,* 20 Wash. 502, 55 Pac. 933; *State ex rel. Smith v. Superior Court,* 30 Wash. 219, 70 Pac. 484; *Bennett v. Wallace,* 43 Cal. 25; *People v. Board of Health,* 33 Barb. 344; *Stewart v. Great Northern R. Co.,* 65 Minn. 515, 33 L. R. A. 427.   The sufficiency of the petition for condemnation is sustained by the following:   *Lewis County v. Scobey,* 31 Wash. 357, 71 Pac. 1029; 6 Ballard, Law Real Property, 253; *Spokane v. Colby,* 16 Wash. 610, 48 Pac. 248; *Marquette etc. R. Co. v. Longyear,* 133 Mich. 94, 94 N. W. 670; The legislature has expressly conferred upon electric railways the power of eminent domain.   Laws 1899, p. 143; Laws 1901, p. 298; *State ex rel. Kent Lumber Co. v. Superior Court,* 35 Wash. 303, 77 Pac. 382; Laws 1903, pp. 366, 384; *State ex rel. Attorney General v. Superior Court,* 36 Wash. 381, 78 Pac. 1011.   It is not necessary to do more than show that petitioner is a corporation *de facto.*   1 Clark and Marshall, Private Corp., pp. 239, 240; *Quint v. Hoffman,* 103 Cal. 506, 37 Pac. 514; *Reclamation Dist. v. Turner,* 104 Cal. 334, 37 Pac. 1038; *Osborn v. People,* 103 Ill. 224; *State ex rel. Trimble v. Superior Court,* 31 Wash. 445,

72 Pac. 89. In answer to the objection that public and private uses are blended in the same charter and therefore it is void, counsel cited, 1 Lewis, Eminent Domain (2d ed.), § 160; *Lake Koen Nav. etc. Co. v. Klein,* 63 Kan. 484, 65 Pac. 684; *Denver etc. R. Co. v. Union Pacific R. Co.,* 34 Fed. 387; *Hollister v. State,* 9 Idaho 8, 71 Pac. 541; *Bridal Veil Lumber Co. v. Johnson,* 30 Ore. 205, 46 Pac. 790, 60 Am. St. 818, 34 L. R. A. 368; *In re Niagara Falls etc. R. Co.,* 108 N. Y. 375, 15 N. E. 429; *Chicago R. Co. v. Wiltse,* 116 Ill. 449, 6 N. E. 49; *Phillips v. Watson,* 63 Iowa 28, 18 N. W. 659; *Plecker v. Rhodes,* 30 Gratt. 801; *Berrien Springs Water Power Co. v. Berrien Circuit Judge,* 133 Mich. 48, 94 N. W. 379, 103 Am. St. 438. There is a necessity for the water power sought to be condemned. *Postal Tel. Cable Co. v. Oregon Short Line etc. R. Co.,* 23 Utah 474, 65 Pac. 735, 90 Am. St. 705; 10 Am. & Eng. Ency. Law (2d ed.), 1057, 1058, 7 Lawson, Rights. Rem. and Pr., § 3886; *In re Wellington,* 16 Pick. 87, 26 Am. Dec. 631; Cooley, Const. Law, 336; *Cotton v. Mississippi etc. Boom Co.,* 22 Minn. 372; *Simpson v. Kansas City,* 111 Mo. 237, 20 S. W. 38; *Ford v. Chicago etc. R. Co.,* 14 Wis. 663; *Coster v. Tide Water Co.,* 18 N. J. Eq. 54; *Douglass v. Byrnes,* 59 Fed. 29; *Eldridge v. Smith,* 34 Vt. 484. Every facility needed for the operation, maintenance, and use of a railroad is for public purposes. *People v. Kerr,* 27 N. Y. 188; *New York etc. R. Co. v. Kip,* 46 N. Y. 546, 7 Am. Rep. 385; *Low v. Galena etc. R. Co.,* 18 Ill. 324; *Alabama etc. R. Co. v. Odeneal,* 73 Miss. 34, 19 South. 202; *Olmsted v. Proprietors of Morris Aqueduct,* 47 N. J. L. 311; *Harvey v. Lloyd,* 3 Pa. 331; *Aurora etc. R. Co. v. Harvey,* 178 Ill. 477, 53 N. E. 331. The objection that no franchises have actually been granted to the company has been decided adversely to relator's contention. *Prescott Irr. Co. v. Flathers,* 20 Wash. 454, 55 Pac. 635; *California Southern R. Co. v. Kimball,* 61 Cal. 90.

FULLERTON, J.—The respondent, The Centralia-Chehalis Electric Railway and Power Company, is a corporation organized under the laws of the state of Washington. The objects for which the corporation was formed, as recited in its articles, are many and somewhat varied, and those of a public and quasi-public nature are commingled with those that are purely private. Its primary purpose, however, according to the testimony of its promoter, is to build, equip, and operate electric street railways in the cities of Chehalis and Centralia, and an electric railway between those two cities to be connected to and operated with the street railways, for the purposes of carrying passengers and freight for hire.

For the purpose of generating the necessary electric current to operate its railways, the respondent sought to create a water power on the Chehalis river. It purposes to erect at the site selected a dam across the river, some sixty or sixty-five feet high, which will at once create the necessary fall for power purposes and provide a storage basin which can be drawn upon during the dry season when the natural flow of the river may be insufficient to produce the required power. The dam when constructed will cause the water to back up and overflow a considerable area of land not now covered by water, a part of which belongs to the relator. The respondent was unable to agree with the relator as to the compensation to be paid for the land taken and damaged belonging to him, and brought an action to condemn under the statutes of eminent domain. After a hearing the court made the preliminary order adjudging the use to which the respondent intended to apply the property to be a public use, that a necessity existed for its taking, and ordered the question of the amount of compensation to be paid the relator to be submitted to the determination of a jury. This proceeding was brought to review that order.

The relator first contends that the use to which the respondent contemplates putting the property is not a public

use.   The relator does not deny, of course, that the operation of a system of electric railway, between and within the cities of Centralia and Chehalis, for the purposes of carrying passengers and freight for hire, would be a public use, within the meaning of the statutes and the constitution, nor does he contend that it is beyond the powers of the court to condemn his land for the purposes of creating the necessary power to operate that system.   But he says that the respondent has not proceeded far enough with its scheme to demonstrate that it will be permitted to construct and operate its proposed railways, since it was made to appear by the evidence that it had not procured franchises from the cities of Centralia and Chehalis permitting it to construct its proposed railways within their boundaries, nor a complete right of way between the two cities.   The relator argues that, inasmuch as the respondent cannot construct its proposed road until it procures these franchises and this right of way, it is not in a position to say that this power will be needed by it at all, and hence it ought not to be permitted to condemn his land until it is certain that the land will be needed.

On the question of the progress the respondent had made in this direction, the record disclosed that it had procured a right of way for its road over all the distance between the two cities except over a tract about eighty rods in width, and that for this it was negotiating with the owner, who was a resident of another county.   It appeared, also, that it was then negotiating with each of the cities for franchises.   That in each of them the terms of the franchise to be granted had been practically agreed upon, and that ordinances had been drawn and introduced granting to the respondent a franchise in accordance with those terms, which had passed to the second reading, and that in one of the cities it had deposited a considerable sum to be forfeited in case it did not carry out the conditions imposed by the franchise which might be granted it; in fact, it was admitted by the relator on the hearing that the respondent was proceeding diligently in its effort

to put itself in a position to commence at once the mechanical construction of its road.

It seems to us that the respondent had proceeded far enough to show that its immediate purpose was to apply the power it sought to create by the appropriation of the relator's property to a public use. This was its declared purpose, and its acts, in so far as it had actually proceeded, pointed to that end. Moreover, it is manifest that an enterprise of this character cannot be completed all at once. Being made up of several parts, it must be completed in parts. Why, then, should one part be deemed of more importance than another? Why may not the city as well say that it will not grant the franchise until the respondent has procured the power, as the court may say that it will not grant the right to procure the power until the franchise is granted? If the city did so say it, and the court should hold with the relator, it is plain that the enterprise has reached a point beyond which it cannot proceed. But we think there is no reason for such a holding. We think that, when it is made to appear that a promoter of an enterprise of this kind is proceeding diligently with it, and nothing is shown to have occurred that will prevent its ultimate accomplishment, that the court ought not to deny the right to acquire by condemnation an essential part merely because there is a possibility that the enterprise cannot be carried to completion. There is no danger that the property condemned will be applied to uses foreign to the purposes for which it is condemned. The property does not become the private property of the condemning corporation in the sense that it can appropriate it to uses of a private nature. It must use it for the purposes for which it condemns it, or else submit to its reversion at the suit of the state. *People v. Pittsburg R. Co.*, 53 Cal. 694; 2 Lewis, Eminent Domain, § 594, *et seq.*

The relator next contends that the respondent should not be permitted to exercise the right of eminent domain because its articles of incorporation show that some of the objects

for which it was incorporated are purely of a private nature, and that, to permit it to condemn property at all, is to permit private property to be taken for a private use. There are cases which maintain the doctrine that a statute authorizing the condemnation of property for uses a part of which, only, are of a public nature is in violation of the rule that private property cannot be taken for private use, and hence cannot be enforced (*Gaylord v. Sanitary District,* 204 Ill. 576, 68 N. E. 522, 98 Am. St. 235 ; *Ryerson v. Brown,* 35 Mich. 333, 24 Am. Rep. 564) ; and there are cases which deny the right to condemn when the avowed purpose, as set out in the petition, is to condemn for uses some of which are private. *Harding v. Goodlett,* 3 Yerg. 40, 24 Am. Dec. 546. But in this case the respondent asks in its petition to condemn for the public uses, only, recited in its articles of incorporation, making no mention of those which are purely private. If a private use is combined with a public one in such a way that the two cannot be separated, then, unquestionably, the right of eminent domain could not be invoked to aid the enterprise, but it has been said—and it seems to us that it is the better reason—that where the two are not so combined as to be inseparable, the good may be separated from the bad, and the right exercised for the uses that are public. *Lake Koen etc. Irr. Co. v. Klein,* 63 Kans. 484, 65 Pac. 684; *Brown v. Gerald* (Me.), 61 Atl. 785. In the first of these cases, the court said :

"We see no greater reason for denying to a private corporation the power of eminent domain for the promotion of a public use, because by its charter it is also authorized to engage in a private enterprise, than to deny to a private person the same power because he is inherently endowed with the same authority."

Furthermore, it was held in the case of *In re Niagara Falls etc. R. Co.,* 108 N. Y. 375, 15 N. E. 429, that in determining the question of public use, "the courts are not confined to, and it is not to be tested exclusively by the descrip-

tion of those objects and purposes as set forth in the articles of association, but evidence *aliunde,* showing the actual business proposed to be conducted, may be considered." And this being true, we think it must be true, also, that when a corporation, whose articles disclose purposes some of which are public and some of which are not, seeks to exercise the right of eminent domain, we may look to its application and the evidence introduced at the hearing to determine what its real purposes are.

Measured by these tests, there can be no question as to the purposes of the respondent corporation; for both its application and the testimony show that it desires this power that it may further its business as a common carrier. But while the exercise of this right of eminent domain must be guarded jealousy, so that the private property of one person may not be taken for the private use of another, after all is said and done, the power to prevent property taken for a public use from being subsequently diverted to a private use must rest rather in the supervisory control of the state than in caution in permitting the exercise of the power. Property taken for a public use by a corporation organized solely to promote a public business may be as easily diverted by it to a private use as it may by one having both public and private objects. It is not the object for which a corporation is formed that prevents it from wrongdoing. The preventive rests in the power of the state to compel it to lawfully exercise its granted privileges.

It is next said that there is no proof that the necessities of the respondent require the use of all of the property it proposes to take. It is true that the evidence does not give the estimated horse-power required to operate the respondent's proposed public facilities, nor does it give an estimate of the horse-power it is proposed to develop, but the president of the company, while testifying, stated generally that all that could be developed by the dam proposed would be required, and that if the company could get along with less it would

be satisfied to take less. Inasmuch as there was no evidence offered to controvert this statement, we think it sufficient to justify the finding that no more is proposed to be taken than the necessities require.

Finally it is said that nothing but land adjacent to the right of way may be taken for the use of a railway company, and that the lands in question here are not adjacent to the railway the respondent proposes to construct. Under the earlier statutes relating to eminent domain, there would be much in this contention, but the several subsequent statutes conferring the power of eminent domain on electric railway companies provide that they shall have the right to appropriate lands for a right of way and "other corporate purposes," without limitation as to the locality. See Laws 1903, p. 366. It seems to us that this is broad enough to permit the condemnation of land for power purposes however distant it may be from the proposed railway.

Contrary to the statement of the relator that the public have no interest in the cost of the power the respondent uses to operate its railway, we think the public have a vital interest in that cost. The public is interested in cheap transportation, and since the use of the facilities nature has afforded will help acquire cheap transportation, the law should be construed rather to enable their use than to permit them to waste in idleness. The principle is distinguishable from the principle of the cases holding that a station for a power house or coal beds cannot be condemned. In this case there is no other source from which power can be derived without an expense which is prohibitive of the enterprise, while in the other cases the situation was wanted because of its convenience, not because of necessity.

The order of the trial court will stand.

MOUNT, C. J., CROW, ROOT, HADLEY, RUDKIN, and DUNBAR, JJ., concur.