SMITH *v.* ARKANSAS IRRIGATION COMPANY.

4-6054 142 S. W. 2d 509

Opinion delivered June 3, 1940.

*M. F. Elms*, for appellant.

*Owens, Ehrman & McHaney*, for appellee.

GRIFFIN SMITH, C. J. This is an appeal from a judgment of condemnation affecting 120 acres of land to be used as a water basin by Arkansas Irrigation Company, operating in Prairie county. As counsel for appellants has expressed it, "The only question for consideration is the right to condemn."

There is a stipulation that value of the land is $4 per acre.

Act 87 of 1909 is entitled "An Act Granting the Right of Eminent Domain to Irrigation Corporations". Pertinent parts of the statute are copied in the first footnote.[1]

---

[1] "Section 1. All corporations organized in this state for the purpose of furnishing water to the public for irrigation of any lands or crops, are hereby authorized to exercise the right of eminent domain and to condemn, take, and use private property for the use of such corporations when necessary to carry out the purposes and objects of said corporation.

"Section 2. Whenever such corporation in the construction of its canals, ditches, drains, conduits, aqueducts, dams, bulkheads, water gates, or in laying pipes, shall deem it necessary or convenient to condemn, take, use, or occupy private property in the construction of its said works or in making new lines of canals, or other necessary works, said corporation may condemn, take, and use said private property, first making just compensation therefor and proceeding as hereinafter provided.

The lands sought to be condemned are contiguous to LaGrue Bayou, across which appellee proposes to construct a dam at a maximum elevation of 205 feet above sea level. Approximately 2,500 acres of land will be flooded, the water level to vary with the seasons and with demands made upon the impounded supply. In summer the bayou is ordinarily dry except for a few holes. It is usually sluggish and the land covered by the bayou is described as practically worthless in its present state for agricultural or grazing purposes, and because of contour it is unfit for rice farming. However, within easy distance of the project are thousands of acres of excellent rice lands. Waters impounded in the reservoir are expected to supply 5,000 acres from an accumulation of 10,000 acre feet.

There is evidence (undisputed) that in 1909 wells drilled to a depth of 37 to 40 feet produced abundantly for irrigation of rice fields, but within recent years the so-called water level has been lowered to such an extent that it is now necessary to go to a depth of 82 to 92 feet. At present 110,000 acres in Grand Prairie are being planted to rice. In normal years this is increased to 190,000 acres.

Evidence by engineers and practical farmers is to the effect that use of impounded surface water is more profitable even if the cost of pumping is not taken into account, the quality being such that production of rice is increased from five to ten bushels per acre as compared with water pumped from wells.

Another factor urged in justification of the project as an agency of public service is that use of surface water will have the effect of conserving subterranean supplies, in consequence of which farmers generally within the rice belt will be benefited. The drop of from 45 to 50 feet in artificial sources since 1909 requires an additional "lift" of the water, entailing extraordinary

"Section 3. Whenever such corporation in the construction of its system of canals, ditches, drains, conduits, aqueducts, or other means of conducting water, shall deem it necessary, it may, as hereinafter provided, draw water from any river, lake, or creek by any means which said corporation may provide, and in general do any act necessary or convenient in accomplishing the purpose contemplated by this act."

costs. The inference seems to be that if well drainage is relieved the level will rise through natural processes.

The evidence is conclusive that rice farming and its incidents are the principal activities carried on in the area where the reservoir is to be built, and in contiguous territory. It is conceded that an abundant supply of water suitable for irrigation purposes is imperative, and that without it farming as it is conducted on Grand Prairie will be impaired, and perhaps eventually destroyed. It follows therefore, that the public interest is inextricably involved in the subject-matter of this litigation, and if the corporation which seeks to condemn is in good faith developing a means of conservation and distribution with the intent of supplying water commercially to the public, and is not undertaking to develop its own properties nor procuring advantages of a private nature, the development comes within the purview of Act 87, and is also constitutional. The evidence discloses that the corporation does not own lands in the rice belt, and that it will to the limit of its capacity supply all purchasers.

In *Cannon* v. *Felsenthal,* 180 Ark. 1075, 24 S. W. 2d 856, Chief Justice Hart, in the court's opinion, said: "The power of eminent domain is an attribute of sovereignty, and, for the purpose of a case like this [where a street improvement district undertook to take property for street improvement purposes] is governed by the provisions of article 2, §§ 22 and 23, of our constitution, which is a part of what is commonly called our Bill of Rights. Section 22 provides that the right of property is before and higher than any constitutional sanction, and that private property shall not be taken or damaged for public use without just compensation. Section 23 provides that the state's right of eminent domain and taxation is hereby and expressly conceded. Under constitutional provisions like these, it is generally held that the procedure for ascertaining the value of the property sought to be condemned, and the making of reasonable provision for the payment of the same, is a matter of legislative regulation".

Chief Justice COCKRILL, speaking for the court in *Railway Company* v. *Petty*, 57 Ark. 359, 21 S. W. 884, 20 L. R. A. 434, said: "When once the character of the use [of property sought to be condemned] is found to be public, the court's inquiry ends, and the legislative policy is left supreme." . . .

A quotation from *Young* v. *Gordon*, 169 Ark. 399, 275 S. W. 890, is: "When once the legislature, or the governmental agency to whom it has delegated power, has determined to exercise [the right of eminent domain] in the manner prescribed by the law-making body, it is then the exclusive province and duty of the judiciary, when the character of the proposed use is challenged, to determine whether the purpose is a public one, and, if so, to preserve the right of the individual to just compensation for his property." [2]

Courts in western states where irrigation is essential have quite generally held that the impounding and distribution of water for agricultural purposes fall within constitutional provisions very similar to ours in respect of the right to exercise acts of eminent domain.[3]

Appellants think act 87 is violative of art. II, § 8, of our constitution, and that it is repugnant to § 1 of the Fourteenth Amendment to the federal constitution. It is presumed, with respect to art. II, § 8, that subdivision (d) is relied upon, which provides that no person shall be deprived of life, liberty, or property, without due process of law. To the same effect is the amendment to the constitution of the United States.

A complete answer to these objections is that if the purpose for which the land is taken is public, there has been due process.

It is our view that the purpose is public because of the peculiar situation of rice farmers and their entire dependence upon water.

[2] See *McLaughlin* v. *City of Hope*, 107 Ark. 442, 155 S. W. 910, 47 L. R. A., N. S. 137; *Hogge* v. *Drainage District No. 7*, 181 Ark. 564, 26 S. W. 2d 887; *Clear Creek Oil & Gas Co.* v. *Fort Smith Spelter Co.*, 148 Ark. 260, 230 S. W. 897; *Lee Wilson & Co.* v. *Compton Bond & Mortgage Co.*, 103 Ark. 452, 146 S. W. 110.

[3] *San Joaquin & Kings River C. & I. Co.* v. *James J. Stevenson*, 164 Cal. 221, 128 Pac. 924; *Lake Koen Navigation, Reservoir & Irrigation Co.* v. *Klein*, 63 Kansas 484, 65 Pac. 684. See American Jurisprudence, "Eminent Domain," Vol. 18, § 72.

It is argued that if the act of the Arkansas general assembly is upheld, evidence discloses that a part of the condemned land is not necessary to the undertaking. This argument follows appellants' declaration that the only question for determination is the right of appellee to condemn. We do not think the evidence was sufficient to exclude the few acres contended for by appellants.

Affirmed.