## CAMPBELL AND WIFE v. WARE.

DESCENTS AND DISTRIBUTIONS—*Construction of.*—Where the inheritance is ancestral and comes from the father's side, then it will go to the line on the part of the father, from whence it came, not in postponement but in exclusion of the mother's line; and so, on the other hand, if it came from the mother's side, then to the line on the part of the mother from whence it came, to the exclusion of the father's line.

APPEAL FROM JOHNSON CIRCUIT COURT.

HON. W. N. MAY, *Circuit Judge.*

*Floyd & Cravens*, for Appellants.
*English, Gantt & English*, for Appellee.

BENNETT, J.—This was a bill for partition and to quiet title. The decree below was in favor of Ware, the complainant. Campbell and wife, the defendants, appealed to this court.

The facts, as appear by bill and answer, are in substance as follows:

Harman H. Brewer died intestate, on the 6th day of September, 1859, seized and possessed of the lands as set forth and described in the bill, leaving him surviving, his widow, Susan F. one of the appellants, (who afterwards intermarried with appellant, Campbell,) and his son, Nicholas Brewer, Jr., his sole heir at law.

Harman H. Brewer acquired the lands in controversy. His homestead and improvements were upon two of the tracts and the others were detached and wild. His widow, Susan F. continued to occupy the homestead, without assignment of dower, from his death until the filing of the bill. She was the mother of Nicholas Brewer, Jr., his sole heir at law.

Nicholas Brewer, Jr., died a minor, intestate, and without issue, about the 7th day of September, 1864, leaving him surviving, his mother, Susan F., and his grandfather, Nicholas Brewer, Sr.

Nicholas Brewer, Sr., died about the 14th day of October, 1864, having in 1860, made a will, by which he devised his estate to his grandson, Nicholas Brewer, Jr., his two daughters, Julia A. Brewer and Mildred Ware and her son, the appellee, with succession to the survivors.

In the year 1864, Mildred Ware died intestate, leaving her surviving, her son James N. Ware, the appellee, her sole heir and distributee.

Julia A. Brewer died, intestate, in October, 1867, without issue, leaving her surviving, appellee, her sole heir and distributee.

Susan F., the widow of Harman H. Brewer, intermarried with appellant, Campbell, in January, 1868.

Mrs. Campbell claims title to the lands as the sole heir and successor to her son, Nicholas Brewer, Jr., by her former husband, Harman H. Brewer.

James N. Ware claims title as the sole heir and successor under the will of Nicholas Brewer, Sr.

The will was made in 1860, before Nicholas Brewer, Jr., had died. We have assumed, and we think there can be no controversy as to the fact, that Mildred · Ware was the daughter of Nicholas Brewer, Sr., and that James N. Ware was her son, although it is sought to be controverted, in the answer of the defendants, but the proof is overwhelming and conclusive on that point.

Under these statements of the facts, the only question that is to be determined is, whether the grandfather or the mother of Nicholas Brewer, Jr., is entitled to his property.

As has been stated, Harman H. Brewer, the father of Nicholas Brewer, Jr., acquired these lands and by his death they descended to his son, subject to the dower interest of his wife, Susan F. The son had made no further acquisition to them.

The transmission of property, whether by descent, succession or purchase, depends upon municipal regulations, and the statutes of descents, in force at the time of the death of Nicholas Brewer, Jr., must govern this case. This is the act, approved *December* 13, 1837, for the construction of which we must be governed by the case of *Kelly's heirs et al. vs. McGuire and wife et al.*, 15 *Ark.*, 555; *Loftis vs. Glass, exr.*, 16 *Ark.*, 680; *West et al. vs. Williams et al., Ib.* 682; *Scull et al. vs. Vaugine et al. Ib.* 695; *Cloyes et al. vs. Beebe et al.* 14 *Id.* 489.

It has been held in the above cited cases, that there are two kinds of estates under our statute of Descents and Distributions, one *ancestral*, the other *new acquisitions*. In the case of *Kelly's heirs et al. vs. McGuire and wife et al.*, the court says: "The manifest intention of the first part of *Section* 10 was to preserve ancestral estates in the line of the blood from whence they came. It was a partial adoption or recognition of the common law principle which invariably followed the line of the blood. If the estate comes to the intestate by the father, or as it may be differently expressed, on the part of the father, then it must ascend to the father and his heirs, and thus overturning the inflexible rule of the common law, that

an estate could never ascend, but should rather escheat to the lord. And so, if it comes by or on the part of the mother, it goes to the mother and her heirs, in exclusion of the heirs of the father. In other words, it remains in the paternal or maternal line, from which it was derived." *     *     *

"The 10th and 22d sections must be construed together, although the exact expressions used in the latter, are not contained in any part of the statute. But words of equivalent signification are employed, and they are embraced within the spirit of the 22d section." * * * * * And further the court says: "The portion of the 10th section, as to *new acquisitions*, gives the father and mother a life estate only, with remainder to the collateral heirs of the intestate, such as brothers and sisters and their descendants, and so on. A new acquisition or newly acquired estate does not afford, of itself, an exact idea of the acquisition."

The first section of the law is general and comprehensive, embracing all lands, whether ancestral or newly acquired, subject to certain exceptions and qualifications, and these exceptions refer to real estate alone. This section also constitutes the table by which real estate is to descend, and personal property to be distributed. The effect of the first section is to vest an absolute estate of inheritance in lands in the person who takes. *Hilliard, in his Trustees on Real Property, vol.* 207, says: "In Arkansas, if there are no descendants, and the estate came from the *father*, it passes *to him and his heirs*. The half blood and their descendants inherit it, unless the estate is ancestral, in which case, *none inherit but those of the ancestral blood*."

The court, in the case of *Kelly's heirs vs. McGuire, et al*, announced as a part of their conclusions: "That, as to real estate, it was the design of the legislature, when there were no descendants, to point out the line of succession, and that this is to depend on the fact, whether the inheritance is ancestral or new, and if ancestral, then whether it came from the paternal or maternal line. If the inheritance was ances-

tral and came from the father's side, then it will go to the line on the part of the father from whence it came, not in postponement, but in exclusion of the mother's line; and so, on the other hand, if it came from the mother's side, then to the line on the part of the mother from whence it came, to the exclusion of the father's line." This, we think, settles the law of this case. The lands, on the death of Herman H. Brewer, who acquired them, descended to his son, Nicholas Brewer, Jr., subject to the dower claim of the widow. Nicholas Brewer, Jr., held the lands, not as a new acquisition, but as an ancestral estate, an estate that came by his father and, on his death, the estate ascended to his grandfather, Nicholas Brewer, Sr.

On his death, to say nothing of his will, the lands descended to his two daughters (Mildred Ware and Julia A. Brewer) of whom the appellee, James P. Ware, son of Mildred Ware, is the only survivor, sole heir, and has the legal title to the lands, subject to Mrs. Campbell's dower.

The bill prays that one third of the lands be partitioned to Mrs. Campbell, as her dower right, and the remainder to James N. Ware, complainant below, and his title thereto confirmed and quieted. The court below decreed as prayed, which we think was right.

Decree affirmed.