\*CARTER *v.* CARTER.

Opinion delivered April 30, 1917.

1.  DESCENT AND DISTRIBUTION—DESCENT OF ANCESTRAL ESTATES.—
    Ancestral estates under the statutes, embrace not only descended estates, but also all others, which may have come to the intestate by gift or devise, from either parent, or from any relation of the blood

\*Additional opinion rendered July 2nd, 1917.   See *post*, page 573.—Rep.

of either parent, and under the statutes it is the manifest intention of the legislature, upon the death of the intestate, without issue, to preserve them in the line of the blood from whence they came to the same extent that descended estates were so preserved at common law.

2. DESCENT AND DISTRIBUTION—ANCESTRAL ESTATES.—One S. died intestate leaving a widow E., and two daughters D. and F. who were the children of S. and his widow E. D. died, leaving a son A., who was her only heir; F. died in childbirth, leaving a child, who died twelve days later. E. was this child's grandmother, and A. was the son and sole heir of its maternal aunt. *Held,* the lands belonging to F. passed to her child as an ancestral estate from her; that the heirs to inherit from this child must be of the blood of F. *Held,* further, that the grandmother E., and A. the son, and sole heir of D., the maternal aunt, inherited the lands from the child of F. in equal parts.

Appeal from Monroe Chancery Court; *John M. Elliott,* Chancellor; reversed.

*Henry Moore* and *Henry Moore, Jr.,* for appellant.

1. Upon the death of Fannie Smith Murphey, the one-half interest which came by the mother and to the mother from Judge Smith ascended in accordance with Kirby's Digest, § 2645, to the mother and her heirs, said heirs being of the blood of W. W. Smith and defendant Albert J. Carter, Jr., is the only blood relative to said infant upon its mother's side. 15 Ark. 555; 19 *Id.* 398; 27 *Id.* 65; 30 *Id.* 517; 69 *Id.* 237; 98 *Id.* 93. Hence defendant inherited one undivided sixth of the lands from his mother.

2. No question as to limitation is involved as defendant was a minor until April 2, 1915, and is not barred.

3. As to the one-sixth conveyed to Mrs. Fannie Murphey by said chancery court decree, the same was a new acquisition, becoming to her infant child an ancestral estate with reference to the mother—Fannie Murphey—on her death, but said one-sixth or one-fourth interest would not be impressed with the same characteristics as to descent that would pertain to Fannie Murphey's half interest which she inherited directly from Judge Smith.

On the death of said infant the blood relations of its mother to whom under Sections 2636 and 2645, Kirby's Digest, said interest would descend and ascend, were defendant Albert J. and Mrs. Emma Smith, one-sixth of one-half, or one-twelfth to defendant and one-eighth to Mrs. Smith. 15 Ark. 555, 584; 34 *Id.* 590.

4. The one-sixth purchased by Fannie Murphey from Dennie Carter was a new acquisition, and on her death descended to her child and was ancestral. On the death of the child, one-sixth ascended to Emma Smith and Albert J. Carter. Kirby's Digest, § § 2636, 2645.

*Manning & Emerson,* for appellees.

1. The decree of the Monroe Chancery Court in 1902 divested the entire interest of Dennie Carter and vested it in plaintiffs, Emma Smith and Fannie Murphey. Appellants' mother agreed to make a deed conveying all her interest, but on account of feebleness did not do so. Recitals in the findings of the court would not control over the judgment where there is conflict. Where there is such conflict the last clause will prevail. Borland on Wills & Adm. (Enlarged Ed.), p. 300; 127 Ga. 740, 56 S. E. 93; 108 N. W. 979; 113 Ark. 500; 22 *Id.* 567; 28 *Id.* 102; 15 R. C. L. 570.

2. There was an amicable family settlement which the courts strongly encourage and enforce. 15 Ark. 275; 41 *Id.* 270; 64 *Id.* 19; 84 *Id.* 610; 36 Ga. 184; 32 S. C. 259; 17 R. I. 402.

3. Appellant did not inherit from the Murphey infant, but the entire interest went to the grandmother, Mrs. Emma Smith. Kirby's Digest, § § 2645, 2636; 27 Ark. 66; 14 Cyc. 28; 19 Oh. 36; 53 N. Y. Supp. 141; 52 N. Y. 67; 37 Conn. 402; 2 Peters, 7 Law Ed. 347; 46 Conn. 119; 10 R. I. 58, etc.

The claim of appellant is wholly without merit and his bill was properly dismissed.

*Henry Moore* and *Henry Moore, Jr.,* for appellant, in reply.

1.  Land received by Fannie Murphey as a new acquisition by purchase from her sister, Dennie Carter. Kirby's Digest, § 2636; 15 Ark. 555, etc.

2.  Ancestral estate that descended from Judge Smith to Fannie Murphey and from her to Baby Murphey.  Kirby's Digest, § 2645; 15 Ark. 586, 682, 693; 27 Ark. 67; 34 *Id.* 596; 75 *Id.* 22.  Appellant is the only heir of the blood of Judge Smith, the last purchasing ancestor.

### STATEMENT BY THE COURT.

In December, 1915, A. C. Carter and T. C. Carter filed their petition in the chancery court for the confirmation of their title to certain lands in Monroe County, Arkansas.  They alleged that they were the legal owners of said lands, and that Albert J. Carter, Jr., claimed title to a part of said lands and asked that he be made a party to the suit to the end that their title to the lands claimed by him might be quieted.  Albert Carter, Jr., was made a party defendant to the suit and filed an answer denying that the plaintiffs were the owners of the lands and alleging that he had an undivided interest in them.  The facts are practically undisputed, and are as follows:

Judge W. W. Smith, a former member of this court, died in December, 1888, intestate, owning the lands in controversy.  Judge Smith left surviving him his widow, Mrs. Emma Smith, and two daughters, Dennie Smith, and Fannie Smith.  Dennie Smith married H. B. Carter and died in 1895, leaving surviving her, her husband, H. B. Carter, and their son, Albert Carter, Jr.  Her son is the defendant in this action, and her husband is still alive. Fannie Smith married L. G. Murphey on January 1, 1901. She died in childbirth on October 18, 1903, and left surviving her her husband and an infant child.  Her child died twelve days after the death of its mother without ever having received a given name.  Her husband is still alive.  On January 11, 1904, Mrs. Emma Smith conveyed the lands in controversy to L. G. Murphey and he afterwards conveyed to the plaintiffs the said lands.  The

plaintiffs. are now in possession of them. Mrs. Emma Smith died in January, 1915. The plaintiffs have been in possession of the lands since December 19, 1905, and have paid the taxes on the lands during that time.

On September 11, 1902, the decree of the chancery court of Monroe County was entered of record in the case of Emma Smith and Fannie Murphey, plaintiffs, and H. B. Carter and Albert J. Carter, Jr., a minor. In that case the defense of Albert J. Carter, Jr., was made by his duly constituted guardian *ad litem.* The prayer of the complaint was that all the right of title and interest of the defendants, Harry B. Carter and Albert J. Carter, Jr., be invested in the plaintiffs and that the plaintiffs be adjudged owners of the property described in the complaint.

The court found that Judge Smith died intestate, leaving surviving him his widow and two daughters, named above. The court also found substantially the following facts:

That the real and personal property of the estate of Judge Smith was worth $15,000. Prior to her death, Dennie Carter made a contract with her mother and sister for the sale of all of her interest in her father's estate and received in payment therefor the sum of $7,609. She failed, however, to make them a deed to the property. Mrs. Smith and Mrs. Murphey took possession of the property conveyed to them by Mrs. Carter and thereafter claimed it as their own. The consideration paid Mrs. Carter was all that the property was worth. The court further found that the widow was entitled to one-third or a child's part of the estate of Judge Smith, and that the plaintiff, Fannie Murphey, and Dennie Carter each, to one-third thereof, and that Emma Smith and Fannie Murphey purchased all of the undivided interest and share of Dennie Carter in the estate of Judge Smith. It was decreed that all the right, title, claim and interest of

the defendants in said property be vested in the plaintiffs, Mrs. Emma Smith and Mrs. Fannie Murphey.

The decree in the present case was entered of record in 1916, and it was decreed that the defendant, Albert J. Carter, Jr., had no interest whatever in said lands and the title therein was confirmed in the plaintiffs, A. C. Carter and T. C. Carter.

Albert J. Carter, Jr., has appealed.

HART, J., (after stating the facts).    The court below found that Dennie Carter sold all her interest in said lands to her mother, Emma Smith, and sister, Fannie Murphey, and that her interest was divested out of her estate and invested in them by the chancery decree rendered in 1902, in the suit of Emma Smith and Fannie Murphey, plaintiffs, v. H. B. Carter and Albert J. Carter, Jr., a minor, defendants.    Judge Smith died intestate, and it is conceded that his two daughters inherited his whole estate subject to his widow's right of dower, but it is contended that the chancery decree just referred to only invested Emma Smith and Fannie Murphey with an undivided one-third interest of Dennie Carter instead of investing them with an undivided one-half interest subject to the widow's dower.    We have not set out in full the chancery decree and findings of the chancellor recited therein in the suit referred to, but we have read and considered it carefully.    When that decree is considered as a whole, it is evident that it was the intention of the court to invest the plaintiffs with the whole interest of Dennie Carter in her father's estate and that the recital that Mrs. Smith was entitled to a one-third interest in fee in the estate was a mere inadvertence.    The decree recites that Dennie Carter sold her whole interest in her father's estate to her mother and sister, and that she received a fair price therefor.    It is formally decreed that all her interest in said estate be invested in her mother and sister.    So we take it as settled by that decree that the undivided one-half interest of Dennie Car-

ter in her father's estate was conveyed to her mother and sister subject to her mother's right of dower as widow.

As it appears from the statement of facts, Dennie Carter died in 1895, leaving surviving her her husband and her son, Albert J. Carter, Jr., the defendant in this action. Fannie Murphey died on October 18, 1903, and left surviving her her husband and a child just born, which died twelve days after the death of its mother. The husband of Fannie Murphey had an estate by the curtesy in her land. Mrs. Emma Smith, grandmother of the infant child of Fannie Murphey, claimed to be its heir and by virtue of this claim executed a warranty deed to the husband of Fannie Murphey on January 11, 1904, and he afterwards conveyed the lands to the plaintiffs herein,

On the other hand, it is denied by the defendant that Mrs. Emma Smith was the sole heir of the infant child of Fannie Murphey, and it is contended by him that he is joint heir with her, and is therefore entitled to one-half of the estate which descended from Fannie Murphey to her infant child.

(1) Under our statute of descents as interpreted by this court it is held that ancestral estates embrace not only descended estates, but also all other, which may have come to the intestate by gift, or devise, from either parent, or from any relation of the blood of either parent, and that, as to all such, it is the manifest intention of the Legislature, upon the death of the intestate, without issue, to preserve them in the line of the blood from whence they came to the same extent that descended estates were so preserved at common law. *Kelly* v. *Mc-Guire,* 15 Ark. 555; *West* v. *Williams,* 15 Ark. 682; *Campbell* v. *Ware,* 27 Ark. 65; *Coolidge* v. *Burke,* 69 Ark. 237; *Oliver* v. *Vance,* 34 Ark. 564; *Hill* v. *Heard,* 104 Ark. 23. In the two cases last mentioned it was held that the construction placed upon our statute of descents in *Kelly* v. *McGuire* has been uniformly followed by this court and that the decision has become a rule of property. When

Fannie Murphey died her infant child acquired her interest in the lands by descent as her sole heir, and the estate having been thus acquired was ancestral. Of course, the infant child died without issue, and the estate having come to it from its mother, it must pass to its heirs who are of the blood of the mother, she being the ancestor from whom the estate came. Our statute regulating the descent of ancestral inheritances requires that the heir should be of the blood of the ancestor from whom the estate comes.

In the case of *Kelly* v. *McGuire,* Charles Kelly married a widow who had two daughters by a former marriage. He accumulated a large estate in Arkansas, where he died intestate in 1834, and by our statutes of descents his real estate descended to his son, Clinton Kelly. In 1836 his widow died, and in 1844 his son, Clinton Kelly, died at the age of seventeen years without having married and without issue, leaving as claimants to his property his paternal grandfather, descendants of his paternal aunt and his two sisters of the half blood. The estate having come from his father only, his paternal kindred were called to the inheritance. Clinton Kelly left no children or other descendants. Hence it was held that his grandfather and the descendants of his paternal aunt, being of the blood of his father, inherited from him. This holding resulted from the construction placed upon what is now section 2636 of Kirby's Digest. The same construction was adopted in the case of *West* v. *Williams,* 15 Ark. 683. In that case the court said that whether an ancestral estate came to the intestate by gift, devise or by descent, upon the failure of issue, it can be inherited by such of his heirs only as are of the blood of the last purchasing ancestor, in the line of the blood from whence it came, either maternal or paternal, as the case may be. There the intestate acquired the estate by devise from his grandmother. It was held that he was in by purchase and thereby became himself a stock of de-

scent as to all those who might inherit from those who
inherited from him, it being the rule of the American
law, as to such future descents of ancestral estates, to
stop at the last purchaser, and ascend no higher for
blood. In that case, the grandmother from whom the
estate came was considered the last purchaser and the
intestate was considered the stock of descent. The opin-
ion in this case was written by Mr. Justice Scott, who,
it is well to remember in connection with Judge Hemp-
stead, the writer, was responsible for the opinion in
*Kelly* v. *McGuire,* which was rendered at the same term
of the court. It is contended, however, that this is con-
trary to the later case of *Campbell* v. *Ware,* 27 Ark. 65.
In that case Nicholas Brewer inherited the lands from
his father. He died intestate and without issue. His
mother, his grandfather and his father's two sisters sur-
vived him. His grandfather soon thereafter died, leav-
ing two daughters surviving him. Mrs. Brewer, the
mother, subsequently married Campell. The two daugh-
ters of the intestate's father died, leaving surviving them
James N. Ware as their sole heir. There was a contest
for the inheritance between Mrs. Campbell, the mother
of the intestate and Ware. The court decreed that Mrs.
Campbell be allotted one-third of the lands as her dower
right and the remainder to James N. Ware. The decree
was right. Mrs. Campbell was entitled to her dower as
widow of H. H. Brewer. Ware was entitled to the re-
mainder as heir of Nicholas Brewer, Jr. The court said
that Nicholas Brewer, Jr., held the lands as an ancestral
estate from his father, and that on his death the estate
ascended to his grandfather, Nicholas Brewer, Sr. This
was an inadvertence. The court should have said that it
descended to the grandfather and the aunts and their
descendants in equal parts, and this would have been in
accordance with the case of *Kelly* v. *McGuire, supra,* and
our other decisions bearing upon the question. The lan-
guage of the court made no difference in the correctness

of the decision, for Ware inherited from his grandfather, and there was no conflict between the interests of the grandfather and the paternal aunts and their descendants as in the present case. This construction is clearly borne out by the case of *Oliver* v. *Vance*, 34 Ark. 564. There John M. Jones died and left a part of his property to Van R. Jones, the son of a deceased brother. Van R. Jones, died a minor and intestate, leaving surviving him his mother and four brothers. The sister of John M. Jones claimed the property as his heir and brought suit against the mother, administrator, and brothers of Van R. Jones. The court held that she had no right to any of it and based its decision upon the case of *Kelly* v. *McGuire, supra*. The court said:

"As to the real estate, it came from a relative in blood of Van R.'s father, and must be considered as ancestral. The court in holding this, in Kelly's case, did not mean that in such cases the donor or devisor became himself the propositus from which the descent was to be traced. The person last entitled to possession, or last invested with the vested remainder, remains the propositus, whose nearest heirs are to be traced. They must, however, be of the blood of the person from whom the benefit came, that is to say, the line of descent must be traced on that line, leaving off the side which bore no relation to the donor. In the case in judgment, we drop the mother altogether, since the land did not come through her, nor any of her blood. We take the father's line, because we find the lands came from a relative of the blood of the father. But we retain the deceased Van R. as the propositus, and seek his heirs on that side, and not the heirs of the original donor. In other words, an estate given by a paternal uncle is ancestral, as if it descended from the father, because it comes, of bounty, from of the father's blood; and the same rule would apply on the mother's side.

"Any construction of the law, which, on failure of descendants of a donee, would make the donor the propositus, would, in effect, enable one by gift or devise of land to a kinsman to reserve a reversion to his heirs after an estate of inheritance given to another. This would contravene the policy of our laws.

"After the death of Van R. Jones, his real estate descended to his brothers to the exclusion of his mother. His brothers were his nearest heirs on that side, and they took, not only real estate in possession, but also vested interests in remainder."

(2) We have copied at length from this opinion because we think it peculiarly applicable to the facts of the present case. As we have already seen, Fannie Murphey died in October, 1903, in childbirth and her child died twelve days thereafter. Emma Smith was the child's grandmother and Albert J. Carter, Jr., was the son and sole heir of its maternal aunt. The lands passed to the infant child as an ancestral estate from its mother and the child became the stock from which we must seek the heirs. The heirs must be of the blood of Fannie Murphey because the lands descended to the infant child from her. Under the rule of descent above announced, Emma Smith, the grandmother, and Albert J. Carter, Jr., the son and sole heir of the maternal aunt, inherited the lands in equal parts. Emma Smith conveyed her interest in the lands to the husband of Fannie Murphey, who in turn conveyed it to the plaintiffs. Fannie Murphey had a one-half interest in the lands which she inherited from her father and an undivided one-fourth interest which she purchased from her sister. This gave her a three-fourths interest in the lands. The grandmother of the infant child and Albert J. Carter, Jr., the heir of its maternal aunt inherited in equal parts.

It follows that Albert J. Carter, Jr., is entitled to one-half of the three-fourths interest, which amounts to three-eighths.

Therefore the chancellor erred in holding that he had no interest in the lands, and the decree will be reversed and the cause remanded with directions for further proceedings in accordance with this opinion.