WOODRUFF v. RURAL SPECIAL SCHOOL DISTRICT No. 74.

Opinion delivered February 8, 1926.

1. SCHOOLS AND SCHOOL DISTRICTS—SPECIAL SCHOOL DISTRICTS—REGULARITY OF CREATION.—An order of the county board of education creating a rural special school district, which recites that an election favoring the creation of such district was "properly and legally held," was sufficient to show that the required notice of the election was given and that the election was held at the time and in the manner prescribed by law.

2. SCHOOLS AND SCHOOL DISTRICTS—STATUTE CONSTRUED.—Acts 1919, No. 15, regulating the creation of rural special school districts, is a general act which applies to Greene County.

3. SCHOOLS AND SCHOOL DISTRICTS—BUILDING FUND TAX.—Provisions of Acts 1911, No. 169, § 8, relating to the voting of a special building fund and the amount of the building fund tax, are not covered by Acts 1917, No. 180, and are not repealed thereby.

4. SCHOOLS AND SCHOOL DISTRICTS—BUILDING FUND TAX.—While the Legislature could not, under Amendment 9 to the Constitution, authorize a tax for school purposes exceeding 12 mills to be voted or used for other than school purposes, in other respects the power of the Legislature is supreme, and it may authorize the electors of a special school district to vote for a building fund not exceeding 12 mills on the dollar, to be continued until the bonds issued therefor and interest thereon are paid.

Appeal from Greene Chancery Court; *J. M. Futrell,* Chancellor; affirmed.

*Cooley, Adams & Fuhr,* for appellant.

*Horace Sloan,* for appellee.

WOOD, J. This action was instituted in the chancery court of Greene County, Arkansas, by the appellant, J. T. Woodruff, against the appellees, Rural Special School District No. 74, hereafter called district, and its directors. The appellant alleged that the appellees were about to borrow money and issue and sell bonds and mortgage the school site and building to secure the same, in pursuance of an election had at which there was voted a permanent building fund tax of six mills per annum by the electors of the district for the purpose of paying the principal and interest on the bond issue. The appellant alleged that this action which the board of directors was about to take was illegal and *ultra vires* for the following reasons: (1) that the order of the county board of education creating the defendant district does not recite on its face that any notice was given of the election in the creation of the district; (2) that the petition for the creation of the district was presented to the board of education on August 6, 1920, and the board fixed August 21, 1920, as the date for the election, which date was more than fifteen days after August 6, 1920; (3) that there is no law applicable to Greene County authorizing the formation of rural school districts; (4) that the taxpayers of the district have no authority to create a permanent building fund tax for the purpose of paying principal and interest on the bond issue.

The appellees answered denying specifically the allegations of the complaint as to the alleged illegal procedure by the board of directors of the district, and alleged that on November 28, 1925, the county board of education amended the minutes of the meeting of the directors at which the district was created so as to include an express recital of notice. The appellees also set up that the district had been exercising its functions as a rural special school district since the date of the order of its

creation, and that it was in any event a *de facto* district with full authority to do the things of which appellant complains.

The cause was submitted on the pleadings and an agreed statement of facts, which set forth in substance the following:

1. That the facts alleged in the complaint and not denied by the answer are admitted to be true.

2. At the instance of the county board of education in 1920, six copies of a notice of the election to be held were posted within the limits of the district on the day that the calling of the election was made, stating the time, place and purpose of the election and describing the territory to be included in the district.

3. There was no newspaper within the territory of the district and no incorporated town.

4. A copy of the order calling the election is attached to the complaint and a copy of the order creating the district; on the next sheet of the complaint was a copy of the order of the county board of education made on November 28, 1925; J. L. Rogers was a member of the county board of education of Greene County at the time the order was made establishing the district; the other members of the present board have been elected since that date; Rogers was present at the board meetings when the election was called for the organization of the district and also at the meeting when the order was made creating the district; the original papers pertaining to the organization of the district are lost.

The minutes of the meeting of the county board of education of November 28, 1925, recited that, at a meeting of the county board of education of Greene County, Arkansas, on September 18, 1920, establishing the district, the minutes of that meeting should have recited the following: "And it further appearing that due notice of said election was given by posting notice in at least five public places in said school district, said notices being posted, that the order calling the election was made, and stating the purpose of and the time and place fixed for

holding the election, said notices in all things complying with the statutes of Arkansas and the order of this board;'' that these words were omitted from the minutes of the board meeting of September 18, 1920, establishing the district, through clerical error.

5.   That a copy of the returns of the annual school election held on the third Saturday in May, 1925, certified to by the judges and clerks of the school election, and the findings and order of the Greene County Board of Education on such election show that the election was regularly held, and that there were twenty-three votes for a building fund tax of six mills per annum, and one vote against it, and also that there were twenty-three votes for borrowing the money, issuing bonds and mortgaging the school site and building to secure the bond issue for the purpose of building and equipping a new school building in the district, and none against it.

The county board of education, upon consideration of the returns, found, among other things, that the notice for the above election was duly posted on April 28, 1925, in five different places in the district, stating the time and place of the election, and that the officers of election duly conducted the same, and the board declared the result of the election to be that the majority of the electors voted in favor of borrowing money, issuing bonds, and mortgaging the school site and building to secure the bond issue for the purpose of securing funds for building and equipping a new school building on the site selected by the electors, and that the majority of the electors voted in favor of a permanent building fund tax of six mills on the taxable property in the district for the purpose of paying principal and interest on the bond issue.

6.   It is further agreed that William Burnley would testify that he remembered seeing posted at different places in the district notices of the election on the organization of the district; that there was as large a vote at that election as at any regular annual school election in the district held after regular notice, the vote of the district being practically unanimous; that he had not heard

of any elector objecting to the creation of the district; that he had been a member of the board of directors since that time, and that the district had always functioned as a rural special school district and had been so treated by the county superintendent, the assessing and tax collecting officials, and the county clerk and treasurer; that since that time they had held school elections as distinguished from school meetings usually held by common school districts; the old school house had reached a state of dilapidation, and the district could not continue to have a school until the new building was erected; that the building could not be erected unless the money could be borrowed on long time on a bond issue; that, in the judgment of the board of directors, a six-mill tax could be pledged for the building fund and at the same time have sufficient funds left to have the school taught for at least eight months in each year.

7. That the appellee district was the first rural special school district attempted to be created by the Greene County Board of Education after the establishment of that board; that since that time several rural special school districts have been created, all of them following the form used in creating the appellee district.

Upon the pleadings and facts stated, the chancery court entered a decree dismissing the complaint for want of equity, from which decree is this appeal.

1. The appellant's counsel contend, first, that the order of the county board of education creating the district is void on its face because it does not recite the giving of notice. The statute under which the rural special school districts are established out of one or more common school districts nowhere provides that the order of the county board of education creating the district shall recite that notice was given of the election. Sections 8831-8842, Crawford & Moses' Digest. Conceding, without here deciding, that the notice of election is jurisdictional, yet, in the absence of a statute requiring the county board of education to recite such fact in its order and making such recitals the only proof of fact of notice, the

order creating the district is not void because of a failure
to recite expressly that notice of the election was given.
The order of the county board of education creating the
district contains the following recital:

"It further appearing to the county board of educa-
tion that such election was held at the time and in the
manner prescribed by law and that said election was in
all things properly and legally held and in all things con-
formed to the county board of education." This recital
was sufficient to show that the board of education found
that the election was held at the time and in the manner
prescribed by law. The election could not have been held
at the time or in the manner provided by law unless the
notices prescribed by the statute had been given. There-
fore the order of the county board of education does in
legal effect recite that the notice of the election was
given, although it does not in express words say "notice
of the election was given." We are convinced that the
order of the county board of education creating the dis-
trict is not void because it fails in express terms to recite
that notice of the election was given. If the statute con-
templated that the order of the county board of educa-
tion creating the district should show that the notice of
the election was given as a condition precedent to the
validity of the order creating the district, nevertheless
it is not contemplated that the order shall set forth *in
haec verba* that notice was given, or detail in minutiae
the steps that were taken in order to constitute due and
legal notice. A finding and recital of the board in its
order, above set forth, meets every requirement of the
law to show that notice of the election was given. If
the order of the county board of education had recited
in express words that notice of the election was given,
such recital would not have been as complete to show that
the law had been complied with as is the language used
above set forth. It must be remembered that the pro-
cedure for establishing rural special school districts is
not in the nature of a suit *inter partes*.

2.   The appellant next contends that the order call-
ing the election does not designate a proper time.   The
law provides that the county board of education shall
designate a day for the election not less than seven nor
more than fifteen days distant after the presentation of
the petition to said board.   Sections 8828-8832, C. & M.
Digest.   The facts show that the election was called on
the 6th of August, to be held on August 21.   Excluding
one of the days from the count, not more than fifteen days
elapsed from the day the election was called until it was
held.

3.   It is next urged by learned counsel that there is
no law applicable to Greene County authorizing the
formation of rural special school districts.   They say that
the original act providing for rural special school dis-
tricts (act 321 of the Acts of 1909, p. 97), was repealed by
act 35 of the Acts of 1915, p. 108, citing *Special School
District No. 33* v. *Howard,* 124 Ark. 475, where we so
held.   But act No. 35, *supra,* only applies to the changing
and altering of *boundary lines of single or special school
districts.*   It does not cover the subject-matter of the
creation of rural special school districts out of one or
more common school districts, which is the subject-mat-
ter of § 8831 of C. & M. Digest (act 15 of the Acts of 1919,
p. 6.).   Therefore the latter act (act 15 of the Acts of
1919), being a general law, does apply to Greene County,
and there is no special act applicable to Greene County
covering the same subject-matter in conflict therewith or
repealed thereby.   If there be a conflict between act No.
35 of the Acts of 1915 and act 15 of the Acts of 1919, as
applied to Greene County, then the latter act, being the
last enactment on the subject, would prevail.   So, in any
view, act No. 15 of the Acts of 1919, under which the dis-
trict under review was organized, is applicable to Greene
County.

4.   Counsel urge in the last place that the pro-
vision for a permanent building fund tax is illegal.   Under
Amendment No. 9 to the Constitution, the General Assem-
bly "may, by general law, authorize school districts to

levy by vote of the qualified electors of such district a tax, not to exceed twelve mills on the dollar in any one year, for school purposes." The facts show that the voters at the annual school election in May, 1925, voted a permanent building fund tax of six mills for the purpose of paying the principal and interest on a bond issue to procure funds for a new school building and equipment.

Section 8 of act 69 of the Acts of 1911, page 141, approved April 7, 1911 (§ 8840, C. & M. Digest), provides in part as follows: "The board of directors shall have the power to borrow money for building purposes if authorized by a vote of a majority of the electors of the district at any annual election. Such vote may be 'For building fund,' or 'Against building fund,' and shall state the amount of the building fund tax which the voter desires levied. * * * If a majority of the votes cast are 'for building fund,' it shall be equivalent to voting a building tax of the amount or rate as determined by this section for each succeeding year until the money borrowed by the board of directors, pursuant to such vote, together with all the interest thereon, shall have been fully paid. When a building fund has been specially voted for, as provided in this section, the board of directors may borrow money, and mortgage the real property of the district as security therefor, under such conditions and regulations as to amount, time and manner of payment as the board of directors shall determine, and may, from time to time, renew or extend any evidence of indebtedness or mortgage issued or executed hereunder. All moneys borrowed under this provision shall be placed in the county treasury to the credit of the building fund of the district, and the board of directors shall issue to the person, firm or corporation advancing or lending such money a certificate, signed by the president and secretary of said board, in the following form:" The act then sets forth the form of the certificate to be used in triplicate, and provides that one copy shall be filed with the clerk of the county court, and then continues: "Upon the filing of said certificate, it shall be the

duty of the county court to levy each succeeding year a building tax of the amount or rate voted for, against the property in said district, until the amount thus borrowed, with the interest due thereon, has been fully paid.''

Act 180 of the Acts of 1917, approved March 6, 1917, pages 983, authorizes rural special school districts to borrow money for the purpose of purchasing school sites and buildings and erecting, constructing and repairing a school building or buildings, and to issue bonds for that purpose and to mortgage the property of the district for the security of the bonds. There is a provision in this act to the effect that this act shall not be construed as authorizing any board of directors of any rural or consolidated special school district to issue bonds unless authorized to do so by vote of the legal electors at the annual school election as provided in act 321 of the Acts 1909 of the General Assembly of the State of Arkansas. It is also provided that it shall be unlawful to use any money arising from the sale of any bonds issued under the act "for any use or purpose whatever than herein specified and directed," and making it a felony to do so. There is no provision in the latter act to the effect that, if a majority of the votes cast are "for building fund", it shall be equivalent to voting a building tax of the amount or rate for each succeeding year until the money borrowed by the board of directors, pursuant to the vote, together with the interest thereon, shall have been fully paid, as is contained in the act of 1911. Counsel for the appellant contend that the provisions of § 8 of act 169 of the Acts of 1911, *supra,* are repealed by act 180 of the Acts of 1917, *supra.* They say the provisions of the latter act were intended to cover the entire subject-matter of the former as to the borrowing of money and the issuing of bonds by rural special school districts.

But we do not find any conflict in the two statutes. An examination of them, without further setting out their provisions, will show that the act of 1917 does not cover the entire subject-matter of § 8 of act 169 of the Acts of 1911. While the provisions of § 8 of act 169 do author-

ize the board of directors, when a building fund has been voted by a majority of the electors at the annual election, to issue bonds for money for building purposes and to mortgage the property of the district as security therefor, as in the act of 1917, there are other provisions in § 8 of act 169, *supra,* not covered by the act of 1917 at all. And it does not appear from the provisions of the latter act that it was intended to cover all the provisions of the former act, and that it was intended as a substitute therefor. The provisions in § 8 of act 169 relating specifically to the voting of a special building fund and the amount of the building fund tax are not covered by the provisions of act 180 of the Acts of 1917.

Amendment No. 9 to the Constitution, *supra,* does not inhibit the Legislature from enacting a law authorizing the electors in rural school districts from voting for a building fund tax and issuing bonds and borrowing money for buildings to be used for school purposes, as the Legislature has done in act No. 169 of the Acts of 1911, *supra.* In the absence of such inhibition, the Legislature has plenary power over the subject. The only limitation upon the legislative authority to be found in the Constitution is that the tax voted for school purposes in any one year shall not exceed the sum of twelve mills on the dollar. But this provision does not inhibit the Legislature from authorizing the electors in rural school districts to vote for a building fund not to exceed twelve mills on the dollar in any one year, and such tax to be continued each succeeding year until the money borrowed by the board of directors pursuant to such vote, together with the interest thereon, shall have been fully paid. To be sure, Amendment No. 9, *supra,* contemplates that the taxes of school districts for school purposes shall be levied annually by the qualified electors of the district, and that this tax, when voted for school purposes, shall not exceed twelve mills on the dollar.

The amendment is not self-executing  The Legislature had to provide for the election to be held under it. The Legislature could not authorize the electors, at the

annual school election provided, to vote a tax exceeding twelve mills on the dollar, nor to vote a tax for any other than school purposes; nor could the Legislature authorize the tax, when voted, to be used for any other than school purposes. But, within these restrictions, and in all other respects, the power of the Legislature is supreme. Therefore we conclude that it was within the power of the Legislature to provide, as it has done in § 8 of act 169, *supra,* that the electors of the district may, at any annual election, vote for a building fund tax not exceeding twelve mills on the dollar, to be continued until the bonds and the interest thereon are paid.

The decree is correct, and it is therefore affirmed.