Townes *v.* McCollum.

5-138 256 S. W. 2d 716

Opinion delivered April 9, 1953.

*Mann & McCulloch,* for appellant.

*Harold Sharpe* and *Glenn F. Walther,* for appellee.

GEORGE ROSE SMITH, J. This is a suit by the appellants, three taxpayers, to enjoin the Board of Election Commissioners of St. Francis County from holding an election to determine whether horse racing is to be permitted in the county. The statute provides that such an election may be called upon the petition of 15% of the qualified electors in the county. Ark. Stats. 1947, § 84-2721. Here the complaint attacks the sufficiency of the petition, upon the ground that the names of 159 specified persons were placed on the petition by someone other than the persons themselves. It is further alleged that unless restrained the Board will unlawfully call the election and that the expense thereof will be paid with public funds, constituting an illegal exaction within Article 16, § 13, of the constitution. In the court below the St. Francis Valley Turf Association, Inc., intervened and demurred to the complaint. The chancellor sustained the demurrer and dismissed the suit.

We think the demurrer should have been overruled, for the complaint states a cause of action. The statute requires that fifteen per cent of the voters petition for an election of this kind. The demurrer admits the insufficiency of the petition in this case. This being true, the election has not been properly called and should not be conducted at public expense.

It is argued, however, that the plaintiffs' remedy is against the county clerk, under the Initiative and Referendum Amendment and its enabling legislation. Amendment No. 7; Ark. Stats., § 2-310. There is nothing in this contention. This proposed election is to be held not under the power of initiative or referendum but under the au-

thority of the statute regulating horse racing, Act 46 of 1935. With respect to similar statutory elections, such as local option elections under the liquor law, the governing procedure is that provided by the statute rather than that contained in Amendment No. 7. *Johnston* v. *Bramlett,* 193 Ark. 71, 97 S. W. 2d 631. The horse racing statute does not prescribe the method for testing the validity of the petition and thus leaves the contestants free to select any appropriate procedure.

It is also suggested that the plaintiffs had an adequate remedy at law by asking the circuit court for a writ of *certiorari* to review the clerk's or the board's determination that the petition is sufficient. The adequacy of the legal remedy is immaterial, however, when a taxpayer seeks protection against an illegal exaction; for the constitution itself confers the right to injunctive relief. For example a statute which attempts to abolish the remedy by injunction and to substitute a remedy at law is unconstitutional. *McCarroll* v. *Gregory-Robinson-Speas, Inc.,* 198 Ark. 235, 129 S. W. 2d 254, 122 A. L. R. 977; see also *Samples* v. *Grady,* 207 Ark. 724, 182 S. W. 2d 875.

Reversed, with directions that the demurrer be overruled. The mandate will issue immediately.

GRIFFIN SMITH, Chief Justice, concurring. I entirely agree with the majority to the extent it has gone, but would add that I am still of the view that pari-mutuel gambling as legislatively and judicially sanctioned is violative of § 14, Art. 19, of the Constitution:—"No lottery shall be authorized by this state, nor shall the sale of lottery tickets be allowed." See *Longstreth* v. *Cook,* 215 Ark. 72, 220 S. W. 2d 433, and the dissenting opinion, p. 83 of the Arkansas Reports.

The majority there rested its determination upon the chimerical assertion that pari-mutuel betting is a game of skill. As the dissenting opinion asserts, the result in point of profit or loss is so interlaced with chance that not even the management can tell, until the final bet is in, what the lot of the ticket-holder will be. Owners of the fran-

chise and the state take their trim before the element of risk arises, then pass on to the reckless, to those who are not concerned with the value of money, and to society's element that basks in the grand parade, whatever of skill either the novice or the turf sharpshooter may possess.

A convincing demonstration of this so-called *applied skill,* repeatedly overtoned in the majority's opinion in *Longstreth* v. *Cook,* is found in financial returns for the past six years, including 1953. The state's "take" in half a dozen years has been $4,306,652.80, while owners who have operated with such consummate finesse received $7,274,701.81. Thus, during the brief period in question, the public has paid $11,581,354.61 for access to the venture of glamouring skill and the authorized bookmakers have apportioned the remainder of $70,758,566 so hopefully donated to the goddess of skill.

I would reëxamine the Longstreth-Cook decision in the light of known factors and overrule its intrusion upon the Constitution.

Ed. F. McFaddin, Justice (dissenting). My dissent is because a court of equity, in the absence of a constitutional provision, is not the proper forum in which to seek to enjoin an election.

In invoking equitable jurisdiction to enjoin an election, the plaintiffs (appellants here) had to decide whether or not such desired relief came under Constitutional Amendment No. 7. If the appellants had claimed that Constitutional Amendment No. 7 allowed this suit, they could well have quoted the sentence in § 16[1] of Amendment No. 7:

"The sufficiency of all local petitions shall be decided in the first instance by the County Clerk or the City Clerk, as the case may be, subject to review by the Chancery Court."

The case of *Hutto* v. *Rogers,* 191 Ark. 787, 88 S. W. 2d 68, supports the claim that equity had jurisdiction to deter-

[1] In the dissenting opinion to *Dixon* v. *Hall,* 210 Ark. 891, 198 S. W. 2d 1002, the sections of Amendment No. 7 were numbered.

mine the sufficiency of the petition under Constitutional Amendment No. 7. But in claiming Amendment No. 7 to be applicable, the inevitable consequence would have been that the County Clerk of St. Francis County was a necessary party to this proceeding. In *Westbrook* v. *McDonald,* 184 Ark. 740, 43 S. W. 2d 356, 44 S. W. 2d 331, and in *Shepard* v. *McDonald,* 188 Ark. 124, 64 S. W. 2d 559, we held that the Secretary of State was a necessary party under a statewide petition: so it would certainly follow that the County Clerk is a necessary party under a county-wide petition. The appellants did not make the County Clerk a party to this suit, so if appellants had claimed that Constitutional Amendment No. 7 applied, then the appellants would have lost the case because of a defect of necessary parties.

So the appellants claim that Constitutional Amendment No. 7 has no application. But they are then instantly confronted with the established rule that, in the absence of a constitutional provision, equity does not take jurisdiction in election matters,[2] particularly when there is an adequate remedy at law.[3] The appellants had a complete remedy at law. When the petitions were presented by the County Clerk to the Board of Election Commissioners, these appellants could have appeared there and challenged the sufficiency of the petitions. If the County Board had decided against the appellants, then they could have gone to the Circuit Court by certiorari. Section 22-302, Ark. Stats., says:

"Issuance of writs of certiorari—Temporary restraining orders.—Said circuit courts shall have power to issue writs of certiorari to any officer or board of officers, city or town council, or any inferior tribunal of their respective counties, to correct any erroneous or void proceeding or ordinance, and to hear and determine the same; application for such writ may be made to the court or the judge thereof in vacation on reasonable notice;

[2] In 19 Am. Jur. 138, many cases are cited to sustain the statement: "Thus, the writ of injunction will not issue for such a purpose as the restraining of election officers from holding an election."

[3] On existence of legal remedy as precluding relief in equity, see 19 Am. Jur. 109.

and a temporary restraining order may be granted thereupon on bond and good security being given, in a sum to be fixed by the court or the judge in vacation, conditioned that the applicant will perform the judgment of the court.''

Thus the appellants had a perfect right to go into the law court and have a writ of certiorari issued against the Board of Election Commissioners.[4]

But instead of following the remedy at law, the appellants have gone into equity, claiming that they want to prevent the expenditure from the public revenue. It seems clear to me that the appellants are not seriously concerned with trying to save the public revenue: they are merely rendering lip service to the ''public revenue'' allegations. What the appellants want to do is to prevent the election. The cases on equity's refusal to enjoin an election are legion. In 33 A. L. R. 1376, there is an Annotation on the subject, ''Power to Enjoin Holding of an Election''; and cases from a score of jurisdictions are cited to sustain this general rule:

''In general, in the absence of some special reason, such as the holding of an election without apparent authority of law, on questions affecting personal or property rights and involving the expenditure of funds other than the cost of the election, the courts have denied their power to enjoin the holding of elections.''

Likewise in 70 A. L. R. 733, there is an Annotation containing cases decided subsequent to the first Annotation, and many later cases are cited, all supporting the rule previously stated.

---

[4] There is nothing in *Graves* v. *McConnell*, 162 Ark. 167, 257 S. W. 1041, which would prevent certiorari from issuing to the Board of Election Commissioners in the case at bar. *Graves* v. *McConnell* held that certiorari would not issue to the Board of Election Commissioners because in that case, the questioned act was a mere ministerial act. In the case at bar, the election officials, in passing on the sufficiency of the petitions, would have been acting in a *quasi* judicial capacity, and certiorari would have been the proper remedy. In *Veterans Taxicab Co.* v. *City of Ft. Smith*, 213 Ark. 687, 212 S. W. 2d 341, we held that certiorari was the proper remedy. See, also, *Williams* v. *Dent*, 207 Ark. 440, 181 S. W. 2d 29.

926

The majority is directing a court of equity to try a case in which is involved the sufficiency of a petition for a countywide election, a matter that could and should have been tried in a law court.

Therefore, I dissent.