Cupp, Adm'r v. Frazier's Heirs.

5-3439                                                387 S. W. 2d 328

Opinion delivered March 1, 1965.

*Huie & Huie, Otis Turner* and *J. E. Still,* for appellants.

*John W. Simmons,* for appellee.

GEORGE ROSE SMITH, J. This proceeding to determine the heirs of Clara McFadden Frazier presents two questions—to some extent novel ones—about the devolution of ancestral property under our statutes of descent and distribution.

The facts are stipulated. Clara's mother, Mamie McFadden, a widow, owned the land in question, as a new acquisition, at her death intestate in 1933. The property was inherited in equal undivided half interests by Mamie's two daughters, Clara and Algerina. Later on Algerina died intestate, without issue, and her half interest passed to Clara. In 1961 Clara died intestate, without issue. She was survived by cousins on her father's side, but the most diligent search has failed to produce any collateral kindred on her mother's side. In this situation the trial court held that all the property passed to the appellees, the heirs of Clara's husband, Sam Frazier, who died intestate in about 1934.

We consider first the half interest that Clara inherited directly from her mother in 1933. Here the question is this: In the complete absence of collateral heirs on the decedent's maternal side of the family, does property held by the decedent as a maternal ancestral estate

cross over to her heirs on the paternal side of the family or does it pass to the heirs of her deceased husband under Ark. Stat. Ann. § 61-107 (Supp. 1963)? We have not previously considered a case involving a total failure of the favored ancestral line, but the statutes and the decisions are so clear that we have no serious doubt about the accuracy of the trial court's decision to award the half interest now in question to the heirs of the deceased spouse.

The statute provides that in the absence of descendants "if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate shall ascend to the mother and her heirs." Ark. Stat. Ann. § 61-110 (1947). Of course it is settled that the search is not really for the heirs of the father or mother; it is for the decedent's heirs on the paternal or maternal side of the family. *Oliver* v. *Vance*, 34 Ark. 564.

Our entire scheme of descent and distribution was painstakingly analyzed in *Kelly's Heirs* v. *McGuire*, 15 Ark. 555. The conclusions announced in that opinion have become rules of property to such an extent that no provision in the statutes can be interpreted by itself; it must be read along with what the court had to say in the *Kelly* case.

The court stated unequivocally in the *Kelly* opinion that an ancestral estate cannot cross over to the opposite side of the family. We first observed, at page 586, that at common law the paternal heirs "shall never inherit" maternal ancestral property, and vice versa. We then went on to declare, at page 591, that under our own statutes an ancestral estate goes to the line from which it came, "not in postponement but in exclusion" of the opposite line. These words cannot be misunderstood.

The statute itself confirms the court's holding. Two sections indicate the legislative intent. Section 61-111 provides that in certain cases if either line be extinct the entire estate goes to the opposite line; but, significantly, this provision "does not apply to ancestral estates."

The other pertinent provision, § 61-107, is even more persuasive in that it refers to kindred who are not "capable of inheriting." This section originally provided that if there were no descendants, parents, "or any paternal or maternal kindred capable of inheriting," the estate should go to the surviving spouse, if any; otherwise it would escheat to the State. In 1959 this section was amended to narrow the possibility of an escheat by providing that in the absence of a surviving spouse the property would go to the heirs of the decedent's deceased spouse. This is the section relied upon by the court below.

This reference to kindred who are "not capable of inheriting" provides a clear indication of the legislative intent. "Kindred" must refer to blood kin, not only because that is the ordinary meaning of the term but also because the original statute dealt exclusively with blood kin, there being no provision for inheritance by the decedent's in-laws. Yet in most instances blood kin, no matter how distantly related, are capable of inheriting. § 61-101. It is only in the simple instance of ancestral property that blood kin might be incapable of inheriting. Thus the reference to kindred who are not capable of inheriting must refer to an absence of heirs capable of taking ancestral property, for otherwise the words are meaningless surplusage. It is our duty to give effect to every word in the statute if possible.

The appellants' only real argument against the trial court's holding upon this first point is that it would be inequitable for Clara's property to pass to the heirs of her deceased husband rather than to her blood relatives on the paternal side. There is a quick answer to this argument. For more than 120 years—from the enactment of the Revised Statutes in 1838 until the amendment of § 61-107 in 1959, by which the heirs of a deceased spouse were permitted to inherit—a surviving spouse would take ancestral property if the favored line proved to be extinct. It cannot be seriously contended that a man's surviving widow is demonstrably less deserving of his estate than persons who might be extremely re-

mote blood relatives on the non-ancestral side of the family. Thus the inequity of which the appellants complain comes not from the original statute but from the 1959 amendment. We cannot refuse to give effect to the plain language of the 1959 amendment merely because we think it brings about an inequitable result in this particular case.

The second question in the case concerns the half interest that Clara inherited from her sister Algerina. This second issue differs from the first one in that it involves two intestacies instead of one. That is, Clara received half the property directly from her mother; so the maternal ancestral kindred were necessarily those of Clara's heirs who were related by blood to Clara's mother. The second half interest, however, passed successively from Mamie to Algerina and from Algerina to Clara. The question is this: Is Clara's mother still the stock of descent for the favored line or may the class be enlarged to include Algerina's blood kin as well? In the latter case the appellants would be capable of inheriting.

At common law, as modified by our statutes and by our earlier decisions construing those statutes, the inheriting class would be limited to the blood kin of Mamie McFadden. This is because in the search for that ancestor who would be regarded as the stock of descent the rule was to disregard those who had received the property by descent, as Algerina did in the case at bar. The search continued up the ancestral line until it reached the first person who had acquired the property in any way other than by descent. That person, referred to as the first purchaser (or the last purchaser, if all prior purchasers be considered in chronological order), became the stock of descent, to whom the decedent's heirs had to be related by blood in order for them to inherit ancestral property. This rule of the first purchaser was fully explained in *West* v. *Williams*, 15 Ark. 682; see also Meek, A Memorandum on the Law of Descent and Distribution, par. 20, reprinted in the Arkansas Bar Association Desk Book (1961).

In *Johnson* v. *Phillips*, 85 Ark. 86, 107 S. W. 170, the court actually reached the right result, in that the decedent's grandfather, who appears to have been the first purchaser, was held to be the stock of descent. The opinion, however, did not discuss the rule of the first purchaser.

Some uncertainty in the law was created by our holding in *Carter* v. *Carter*, 129 Ark. 7, 195 S. W. 10. There the court referred briefly to the last purchasing ancestor, but the opinion actually ignored the rule by finding the stock of descent to be Fannie Murphey, who had received the property by descent rather than by purchase. On rehearing (129 Ark. 573, 195 S. W. 1184) the court adhered to its position and, with no mention of the rule of the first purchaser, overruled *Johnson* v. *Phillips, supra.*

We consider the *Carter* decision to be unsound. Despite the passing reference to the last purchasing ancestor we think it clear that the court overlooked the requirement that the stock of descent be a purchaser. Such an oversight is indicated by the court's failure to state the substance of the rule and by its failure to express any dissatisfaction whatever with the rule. We are not overruling the *Carter* case retroactively, as it involved a rule of property, but the case will not be followed with respect to estates that may vest in the future.

The appellants insist that, under the *Carter* decision, Algerina must be treated as the stock of descent with respect to the half interest that she inherited. The holding in the *Carter* case did not in fact go that far, and we are unwilling to extend beyond its own facts a ruling that we consider to be erroneous.

*Carter* v. *Carter* dealt with a child's inheritance from its mother; so the maternal line, as distinguished from the paternal line, was actually involved. The flaw in the opinion was simply that the court selected the wrong person in the maternal line to be the stock of descent. In the case at bar, however, Algerina and Clara were sisters of the whole blood. If we should hold that Algerina was the transmitting ancestor whose blood is

to determine the course of descent, the fundamental conception of ancestral property is disregarded. This is true because full sisters have exactly the same blood, which makes it impossible to say that property which one inherits from the other comes from one side of the family rather than from the other. We realize that the relationship between sisters may be said to be ancestral within the meaning of our curtesy statute, as in *George v. Alexander,* 229 Ark. 593, 317 S. W. 2d 124, but we think it clear that the statutes of descent and distribution did not contemplate the possibility that an ancestral estate might arise from a transfer of property from one full sister to another.

We conclude that, with respect to the half interest that Clara inherited from Algerina, the stock of descent was Mamie McFadden. In this view there is no distinction between the two moieties, and the trial court was right in treating them both in the same way.

Affirmed.

ROBINSON, J., dissents.

SAM ROBINSON, Associate Justice (dissenting). There is no rule of property established by *Kelly's Heirs* v. *McGuire,* 15 Ark. 555, that keeps the cousins of the intestate from inheriting in the case at bar. Sections 10 and 12 of the 49th Chapter of the Revised Statutes of 1838, Ark. Stat. Ann. §§ 61-110 and 61-112 (1947) were applicable to the facts, and controlling, in *Kelly's Heirs* v. *McGuire* on the point under consideration. Neither of the aforesaid sections of the statute are applicable to the facts in the case now before the court.

In *Kelly's Heirs* v. *McGuire,* Clinton Kelly had two half sisters, Elizabeth and Emeline. They had the same mother as Clinton, but Clinton's father, Charles Kelly, was not the father of the girls. Clinton inherited real property from his father and then died at age 17 without issue and intestate. One of the questions before the

court was whether the half sisters inherited from Clinton the ancestral property he had inherited from his father, or did the property go to Greenberry Kelly, the grandfather of Clinton. Revised Statutes, Chapter 49, Section 10, Ark. Stat. Ann. § 61-110 provides that if the estate came by the father it shall ascend to the father and his heirs. There were heirs of the father, therefore the statute was applicable. Hence the estate ascended to grandfather Greenberry Kelly and descendants of his daughter, Mrs. Elkelburner, the aunt of Clinton.

The other statute which had to be considered in reaching a decision was Section 12 of Chapter 49 of the Revised Statutes, Ark. Stat. Ann. § 61-112. It provides that relations of the half blood inherit equally with those of the whole blood. But this provision did not help Elizabeth and Emeline because the same section provides that it does not apply to ancestral property.

The decision in *Kelly's Heirs* v. *McGuire,* on the point involved here, was based squarely on the two aforesaid statutes. Neither statute applies here. In the first place, no heirs of the half blood are involved. In the second place, Section 10, Ark. Stat. Ann. § 61-110, does not apply because here there are no heirs in the mother's line whence came the estate. Of course the estate cannot descend or ascend to nonexisting heirs; therefore, Section 10 is not applicable. The phrase used by the court in Kelly, the heirs took "not in postponement, but in exclusion" was applicable to the facts in that case but is not applicable to the facts in the case at bar.

The law of descent and distribution is regulated by statute in this state and, of course, as pointed out by the majority, statutes must be read in the light of judicial construction. With this concept of the law in mind I am firmly of the opinion that in the case at bar the blood kin of Clara—her cousins on her father's side—should inherit the property Clara owned in fee simple at the time of her death; and that the remote relatives of her deceased husband (he died more than thirty years ago) should not inherit from Clara under the provisions of our statutes.

Our statutes constitute the controlling law. The statutes governing descent and distribution were adopted in 1838, Revised Statutes of Arkansas, Chapter 49, Sections 1-22 inclusive. There have been no amendments affecting the principle involved in the case at bar, although a 1959 amendment mentioned by the majority added heirs of a deceased spouse to those who might inherit to prevent an escheat to the state. The amendment does not affect the right of the blood kin of the intestate to inherit. If the cousins of the intestate could inherit under the provisions of our statutes as they existed prior to the 1959 amendment, the amendment did not cut out that right.

It necessarily follows that we must look to the statutes to determine who inherits the property owned by Clara in fee simple. Do her blood kin—her cousins on her father's side—inherit it? Or do distant unknown relatives of her deceased husband inherit it? The answer is supplied by Section 1 of Chapter 49 of the Revised Statutes, Ark. Stat. Ann. § 61-101. The applicable part of this statute provides:

"When any person shall die, having title to any real estate of inheritance, . . . and shall be intestate as to such estate, it shall descend and be distributed, . . . Second: If there be no children, then to the father and mother in equal parts, or, if one parent be dead, then the whole to the surviving parent; if no father or mother, then to the brothers and sisters [or their descendants], in equal parts."

It will be noticed that the above statute applies to "real estate of inheritance."

There can be no question about the property owned by Clara being "real estate of inheritance" within the meaning of the statute. It is said in *Kelly's Heirs* v. *McGuire*:

". . . And every estate, interest and right, legal and equitable, in lands and tenements and hereditaments, excepting only leases for years, and estates for the life of another person, are thus inheritable and descendable;

or, as the 1st section expresses it [§ 61-101] 'having title to any real estate of inheritance,' constitutes an inheritable estate, . . ."

Clearly, under this statute, the cousins inherit the property if there is no other statute preventing such inheritance. I respectfully submit there is no such statute.

The majority bases its decision that paternal heirs cannot inherit from the intestate on Ark. Stat. Ann. § 61-110 (Revised Statutes of 1838, Chapter 49, § 10), the pertinent part of which provides:

"In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate shall ascend to the mother and her heirs; . . ."
Section 10, Chapter 49, Revised Statutes, Ark. Stat. Ann. § 61-110, does not limit Section 1, Chapter 49, Revised Statutes, Ark. Stat. Ann. § 61-101 *in the case at bar,* because although the estate came by the mother, she is dead and there are no heirs of the mother, hence the estate cannot go to the mother or her heirs. Therefore, Section 10 has no application whatever to the facts in the case at bar. The statute could only apply if there was a living mother or living heirs of the mother. Here, neither exist.

The majority holds that under Ark. Stat. Ann. § 61-107—the escheat section of the descent and distribution statutes—the property goes to heirs of the deceased husband of the intestate. In referring to this section the majority say:

". . . This section originally provided that if there were no descendants, parents, 'or any paternal or maternal kindred capable of inheriting,' the estate should go to the surviving spouse, if any; otherwise it would escheat to the State."

It appears that due consideration was not given to a part of Ark. Stat. Ann. § 61-107 (Supp. 1963) not appearing in the majority opinion. The statute in full is as follows:

"Descent in absence of kin—Escheat.—'If there be no children, or their descendants, *father, mother, nor their descendants,* or any paternal or maternal kindred capable of inheriting, the whole shall go to the wife or husband of the intestate. If there be no such wife or husband, then the estate shall go to the heirs of such wife or husband, and if there be no such heirs of either wife or husband, then the estate shall go to the State.' " [Emphasis supplied.]

Section 61-107 is clearly an escheat statute. The property would go to the *husband's heirs* only as a last resort and then only to prevent an escheat to the State. But before the *heirs of the husband* can inherit the property there must be no descendants of the father of the intestate. Here, there are descendants of the father. The majority appears to attach considerable importance to the inclusive words of the statute "or any paternal or maternal kindred capable of inheriting," as if this phrase prevented the father of the intestate or his heirs from inheriting, but the phrase does not do away with the right of anyone to inherit. It merely emphasizes that before the heirs of the *husband* can inherit there must be no one else that could inherit under Section 1. In no way does the majority explain just how the quoted language limits the preceding language giving the father's descendants the right of inheriting. Certainly, under Section 1, cousins are capable of inheriting, and here the intestate had cousins.

No doubt, the only reason the escheat statute was enlarged to include heirs of a deceased spouse was because it was thought that before the amendment the statutes gave collateral heirs, if any, the right to inherit in a case of this kind. But if there were no collateral heirs and no surviving spouse of the intestate, the estate would escheat to the State. Hence, the amendment to prevent an escheat where there are no collateral heirs and no surviving spouse.

The majority say that it is not an inequitable construction of the statute to hold that a total stranger to the intestate can inherit in preference to his blood kin—

his cousins—because for 120 years the surviving spouse was allowed to take in a situation of this kind. In no case has this court ever held that in a situation of this kind a surviving spouse was permitted to inherit where there were blood relatives—first cousins—of the intestate.

In *Kelly's Heirs* v. *McGuire,* the court said that it is the universal rule that the sense of an act must be collected from the whole act. I thoroughly agree and respectfully submit that it was never the intention of the General Assembly to permit total strangers to inherit from an intestate in preference to his first cousins where, in many instances, the cousins would be actually as close to the intestate as a brother or sister.

The intestate in the case at bar had an estate of inheritance, Ark. Stat. Ann. § 61-101. There is no doubt that this section gives the estate to the collateral heirs unless it is superseded by some other statute; it is so stated in *Kelly's Heirs* v. *McGuire.* There, the court said:

"The 1st section [Ark. Stat. Ann. § 61-101] is general and comprehensive, embracing all lands, whether ancestral or newly acquired, subject to certain exceptions and qualifications hereafter more particularly noticed, and these exceptions refer to real estate alone. This section also constitutes the table, by which real estate is to descend and personal property be distributed. As, by its express language, it relates to both real and personal property, it was manifestly the design of the Legislature, when there were descendants of the intestate, to send down both to them *per capita,* if in equal degree, and *per stirpes,* if in unequal degree, without any regard to the fact as to how the property had been acquired."

There is no statute applicable to the facts in the case at bar that supersedes Ark. tSat. Ann. § 61-101. Under our statutes, where the property came by the mother it should go to the heirs of the mother, if any. But where there are no such heirs, as in the case at bar, it cannot be said that § 61-110 supersedes § 61-101. In these cir-

cumstances, § 61-101 applies and heirs of the intestate should inherit regardless of whether they are kin on the mother's side or on the father's side.

Under our statutes the blood kin of the intestate should inherit. Therefore, I respectfully dissent.