WILLIAM McDONALD *v.* E. A. BOWEN, JR. ET AL

5-5643                                        468 S. W. 2d 765

Opinion delivered June 28, 1971

*Sloan, Butler, Ragsdale & Dishongh,* for appellant.

*Joseph C Kemp,* City Atty. and *Smith, Williams, Friday & Bowen,* for appellees.

GEORGE ROSE SMITH, Justice. The city of Little Rock, with some aid from a group of private citizens, proposes to submit for approval at a special election a $9,500,000 bond issue under the authority of Constitutional Amendment No. 18 and its implementing statute, Act 206 of 1963, compiled as Ark. Stat. Ann., Title 19, Ch. 31 (Repl. 1968). This is a taxpayer's suit brought by the appellant to enjoin the city directors from proceeding with the election and to obtain a declaratory judgment holding the implementing act to be unconstitutional and declaring some or all of the purposes of the bond issue to be beyond the proper scope of Amendment 18. After a hearing at which a number of witnesses testified the chancellor entered a decree declaring the city's proposal to be valid in every particular. The taxpayer's complaint was accordingly dismissed for want of equity. Upon this appeal the taxpayer argues five points for reversal, which must be discussed separately.

I. As a precautionary argument, the appellant first states that his appeal should not be dismissed for lack of a justiciable issue. We agree with his position. If the contemplated election is in fact illegal, as the appellant contends, the expense of holding it would constitute an illegal exaction for which the constitution provides a remedy by injunction. *Townes* v. *McCollum,* 221 Ark. 920, 256 S. W. 2d 716 (1953). Moreover, a declaratory judgment is especially appropriate in disputes between private citizens and public officials about the meaning of the constitution or of statutes. *Culp* v. *Scurlock,* 225 Ark. 749, 284 S. W. 2d 851 (1955).

II. The appellant contends that the first paragraph of Amendment 18 contemplates a five-mill tax to be voted annually and does not authorize a continuing levy to support a bond issue. We find no merit in that contention. The Amendment provides that the tax may be levied "for the period that may be provided by law." The implementing act authorizes a continuing tax levy to support a bond issue maturing serially over a period of not more than 35 years. Ark. Stat. Ann. §§ 19-3106 and -3107. In a substantially similar situation, where the constitution provided for an annual twelve-mill school tax, we held that the legislature could authorize the electorate to approve a continuing levy to support a long-term bond issue. *Woodruff* v. *Rural Special Sch. Dist. No. 74,* 170 Ark. 383, 279 S. W. 1037 (1926). We see no material difference between that case and this one.

III. The most serious question in the case is whether Amendment 18 authorized the city to utilize the five-mill tax levy to support a bond issue as a means of financing the nine separate proposals that are set forth in the petition for the special election. (The petition contains a tenth catch-all proposal, but counsel for the appellees conceded at the oral argument that the language is too broad and vague to justify judicial sanction of the expenditure of funds under that clause of the petition.)

Amendment 18 was clearly designed to enable cities of the first class in counties having a population of at least 105,000 to levy a five-mill property tax for the purpose of attracting industries. The Amendment begins with these words: "It being most apparent that factories, industries and transportation facilities are necessary for the development of a community and for the welfare of its inhabitants, a special tax not exceeding five mills on the dollar of all taxable property . . . may be levied . . ." The rest of the Amendment goes on to specify how and by whom the proceeds of the tax levy are to be spent.

The third paragraph of the Amendment enumerates five purposes for which the tax money may be used.

We are quoting that paragraph verbatim, except that for convenience of discussion we have divided it into subparagraphs and have inserted parenthetical numbers for the several enumerated purposes:

"The proceeds of such tax may be expended as may be provided by law

(1) for the purpose of securing the location of factories, industries, river transportation and facilities therefor within and adjacent to such cities or

(2) other public purposes, exclusive of charities and those now within the powers of said cities to perform,

and the expenditures may also be made for

(3) advertising such cities and the State, or

(4) making secured loans to such factories and industries, or

(5) for any other public purpose that may be provided by law, connected with securing the location of such factories and industries and encouraging them."

We have no hesitancy in holding that five of the purposes enumerated in the petition for the special election are set forth in such general language that we cannot properly declare that those purposes fall within the scope of Amendment 18. We quote the language of the petition with respect to those five proposals:

2. To improve by reconstructing and paving certain streets and to construct certain streets, including, where necessary, acquisition of rights of way, widening, curbing, overpasses, underpasses, bridges and draining appurtenances.

3. To construct or reconstruct certain storm drainage facilities, including, where necessary, acquisition of rights of way and appurtenances.

4. To construct, reconstruct, equip or re-equip certain fire stations.

\* \* \* \*

7. To acquire, construct, establish, develop and improve facilities for the off-street parking of vehicles and any facilities or improvements necessary or desirable in connection with the utilization and operation thereof.

\* \* \* \*

9. To acquire, construct, establish, develop and improve parks and recreational facilities, indoor and outdoor, and facilities necessary or desirable in connection with the utilization and operation thereof.

It will be noted that none of the foregoing purposes are defined in such a way as to limit the expenditures to projects, such as streets, having a *direct* connection with the factories, industries, etc., that are the primary subject of the Amendment. See, by way of contrast, *Myhand* v. *Erwin,* 231 Ark. 444, 330 S. W. 2d 68 (1959), where Amendment 49 was held to authorize the construction of a road leading to a $35,000,000 industrial plant.

Here the appellees introduced witnesses who testified in general terms that business men and corporations are apt to be favorably impressed, in seeking a location for a new plant or the like, by a city which has well-paved streets, adequate storm drainage facilities, sufficient fire stations, and so on. The fact remains, however, that nothing in the petition requires any direct connection between the proposed capital improvements and the new industries. It would be entirely permissible for the city to spend all or any part of the bond proceeds for the improvement of streets in residential areas or for other improvements having only a remote bearing upon the attraction of new industries. That authority, however, already existed and certainly was not the reason for the adoption of Amendment 18, with its attendant tax levy.

Nor do we think the scope of the Amendment to be indefinitely broadened by what we have numbered as its second purpose: "[O]ther public purposes, exclusive of charities and those now within the powers of said cities to perform." We are unwilling to lift the words, "other public purposes," from their context and take them to mean absolutely any conceivable public purpose, regardless of its connection with the rest of the Amendment. In Words and Phrases there are listed some fifty public purposes that might appropriately be accomplished by the use of municipal funds. McQuillin points out that the term "public purpose" is so broad that the courts as a rule have not attempted a judicial definition of it. McQuillin, Municipal Corporations, § 10.31 (3d ed., 1966).

In holding that the phrase, "other public purposes," was not an open-end authorization of unlimited scope, we are influenced by two principles of interpretation. First, the rule of construction known as *noscitur a sociis* (It is known from its associates) requires that general language be construed to be comparable to the specific language of its context. *Altus Cooperative Winery* v. *Morley*, 218 Ark. 492, 237 S. W. 2d 481 (1951). Here every other clause in the Amendment has to do with the attraction of new industry. In that context the reference to other public purposes may fairly be taken to mean those of the same nature as the enumerated ones, even though not specifically set forth.

Secondly, the rules of statutory construction also apply to the interpretation of constitutional amendments. *Bailey* v. *Abington*, 201 Ark. 1072, 148 S. W. 2d 176 (1941). Hence, in cases of ambiguity, it is proper to refer to the title of such an amendment as an aid to its interpretation. *Haile* v. *Foote*, 90 Idaho 261, 409 P. 2d 409 (1965); *State ex rel. Getchell* v. *O'Connor*, 81 Minn. 79, 83 N. W. 498 (1900); *Rathjen* v. *Reorganized Sch. Dist. R-11*, 365 Mo. 518, 284 S. W. 2d 516 (1955). The title of Amendment 18, which was all that the voters saw upon their ballots in voting for that initiated measure, read as follows:

To authorize the voters to vote a special tax in the cities of the first class located in counties now

or hereafter having not less than one hundred and five thousand population to secure the location and encourage the operation of factories, industries, river transportation and facilities therefor within and adjacent to such cities. [Acts of Arkansas, 1929, p. 1526.]

Under our Initiative and Referendum Amendment the ballot title must contain a fair statement of the scope and import of the proposed measure. *Westbrook* v. *Mc-Donald*, 184 Ark. 740, 44 S. W. 2d 331 (1931). Since the title to Amendment 18 gave the voters no hint that taxes might be levied under the measure for purposes other than those stated, we are confirmed in our conclusion that no such sweeping construction of the Amendment should be adopted.

We are of the opinion, however, that the other four purposes enumerated in the petition now before us fall fairly within the scope of Amendment 18. One is the construction of a convention center, which is shown to be not only a means of advertising the city but also a facility having a direct connection with the specific purpose of attracting new industries. Two of the purposes have to do with river transportation, barge terminals, railroad terminals and facilities, and similar improvements falling fairly within the purview of the Amendment. The ninth purpose: "To provide capital for a nonprofit small business investment company to aid in the financing of industries when such financing is not available from private sources," appears to be an appropriate means of achieving what we have numbered as the fourth express aim of the Amendment, the making of secured loans to new factories and industries.

IV. Amendment 18 provides that the proceeds of the tax levy are to be expended by a board of three commissioners. One of the commissioners is to be selected by a majority of the judges of this court, a second by a majority of the circuit, county, and chancery courts in the county, sitting as a board, and the third by a majority of the banks and trust companies located in the city. It is quite apparent that the three

commissioners were to be carefully selected and were to have positions of responsibility and authority in the expenditure of the funds collected under the Amendment. We must therefore hold that section 5 of the implementing act, Ark. Stat. Ann. § 19-3105, is unconstitutional to the extent that it attempts to strip the board of commissioners of all the authority vested in them by the Amendment, to reduce them to mere puppets having no duties except to receive the tax proceeds from the county treasurer and deposit them in a bank account, and to vest all the powers of the commissioners in the governing body of the city. The conflict between the act and the Amendment is so direct that the two cannot possibly be reconciled. In such a situation the provisions of the constitution are of course controlling.

V. Finally, the Amendment provides that the petition for the special election must be signed by "ten per cent of the owners of real property in such city." Neither the constitution nor the implementing act attempts to say how the necessary ten per cent is to be determined, as, for example, by number, by the area of the property, or by its assessed value. The city proposes to solve the problem by accepting a petition signed by the owners of property having at least ten per cent of the total assessed value of the real property within the city.

We do not think that the proposed procedure conforms to the intent of the Amendment. Ten per cent of the owners by assessed value might enable a comparatively small group of wealthy persons or corporations to call the election. But the Amendment says "ten per cent of the owners of real property," not the owners of ten per cent of the real property. We think the plain language of the Amendment means ten per cent in number of the total real property owners within the city. In that way the small property owner, whose taxes are just as burdensome to him as those paid by a large corporation are to it, has a real voice in the calling of the election.

In conclusion, we should add that we have not overlooked an amicus curiae brief filed by certain mem-

bers of the Jefferson county bar. We are told that Jefferson county or the city of Pine Bluff wishes to construct a convention center, but the county does not have sufficient population to bring it within the provisions of Amendment 18. We are asked to decide instead whether the county or city may construct such a center under the provisions of an entirely different part of the constitution; namely, Amendment 49.

We must decline that invitation. There does not appear to be any case pending in Jefferson county or elsewhere involving the question now posed. Certainly there is in this court no record of any such case. Consequently we are being asked to render a purely advisory opinion upon an academic question, which we have consistently refused to do. *Hogan* v. *Bright,* 214 Ark. 691, 218 S. W. 2d 80 (1949).

The decree of the chancery court is affirmed in part and reversed in part and the cause remanded for the entry of a declaratory decree consistent with this opinion.

FOGLEMAN, J., concurs in part and dissents in part.

JOHN A. FOGLEMAN, Justice, concurring in part, dissenting in part. I concur in most of the majority opinion and in some of the results reached where I cannot fully subscribe to the reasons given for reaching them. My principal disagreement with the majority relates to a specific purpose for which taxes levied and bond proceeds may be utilized.

At the outset, I should express my agreement that appellees were well advised to concede that one purpose included in the proposed petition was far too vague to form the basis for a tax levy under Amendment 18. That item was:

To accomplish any or all of the improvements authorized by the Amendment No. 18 Implementing Act of 1963.

Voters certainly could have no understanding of what

they were being called upon to approve from such vague and comprehensive language.

My reading and rereading of clause (2) with the entire amendment leads me only to the conclusion that this clause would, except for the ballot title, authorize a large city to levy a 5-mill tax, in addition to the 5-mill general purpose tax authorized by Article 12, Section 4, of our Constitution as amended by Amendment 10, and the 5-mill tax authorized by Amendment 13, for any public purpose for which the city did not already have the authority to expend taxes otherwise authorized. A look at the wording of the amendment, and particularly this clause, seems to eliminate, rather than indicate, a more limited interpretation. Purposes (1) and (2) are connected by the conjunction "or." The use of the disjunctive militates against the application of the maxim of noscitur a sociis. 82 C. J. S. 656, Statutes, § 331. In this context, it cannot be taken to indicate that the two clauses express alternate meanings, or that the latter is explanatory of the former. More important, however, is the fact that the words "other public purposes" are followed by words limiting their meaning. If the meaning of "other public purposes" is limited by purpose (1) then we have a tremendous waste of words —a luxury we are not afforded in constitutional or statutory construction. If the reasoning of the majority is correct, then the amendment would mean the same thing with or without purpose (2). Furthermore, the words "exclusive of public charities and those now within the powers of cities to perform" would be totally unnecessary. That securing the location of factories and industries prior to the adoption of Amendment 18 was a public purpose is at least subject to serious doubt. See, e. g., *City of Little Rock* v. *Raines,* 241 Ark. 1071, 411, S. W. 2d 486. But if "other public purposes" must be those having a direct connection with other purposes of the amendment then it was a useless gesture to go to the trouble to exclude charities. What possible connection could "charities," as the word is commonly understood, have with any of the other of the purposes specifically listed in the amendment? Or what caused the draftsmen to provide for exclusion of those "public purposes" then within the powers of said cities to per-

form? I have been unable to find any of the powers already possessed which had to be eliminated because of their connection with securing the location of factories, industries, etc., or any of the other specified purposes. In other words, under the majority application, there would have been no "other public purpose" to be excluded. There must have been an intention to exclude something.

In the next place, it is inconceivable to me that both purposes (2) and (5) would have been stated if "other public purposes" in purpose (2) was to have been limited by the words preceding it. Purpose (5) seems to me to say everything the majority says purpose (2) says.

In statutory and constitutional construction, if it is possible to do so, we are bound to give meaning and effect to every word, phrase and clause, so that no word is rendered void, superfluous or insignificant or discarded as surplusage. *Locke* v. *Cook,* 245 Ark. 787, 434 S. W. 2d 598; *Cupp* v. *Frazier's Heirs,* 239 Ark. 77, 387 S. W. 2d 328.

I cannot accept the premise that my construction of this part of purpose (2) of Amendment 18 would render the listing of specific purposes superfluous. In 1929, or even today, there would be room for doubt that securing the location of factories and industries could be a public purpose without constitutional or statutory specification. The same is true with regard to advertising. Making secured loans to factories or industries was not only unauthorized, it was prohibited. Article 12, Section 5, Constitution of Arkansas.

The number of public purposes that might have been accomplished would not be so broad as to cause any misgivings about the meaning of the clause. In the first place, restriction to those purposes not then within the power of such cities is a considerable limitation. In the second place, determining whether a purpose is public has never presented any problem. We have had no difficulty in defining public purposes in eminent do-

main and tax exemption cases. We have held that the following are public purposes: a highway approach to a proposed private toll bridge, *McClintock* v. *Bovay,* 163 Ark. 388, 260 S. W. 395; a 40-acre tract, which has been a public park, used for track meets and agricultural exhibits and keeping livestock used in working streets, *Hope* v. *Dodson,* 166 Ark. 236, 266 S. W. 68; a city dumping ground, *Hudgins* v. *Hot Springs,* 168 Ark. 467, 270 S. W. 594; impoundment of water by an irrigation company to supply surface water commercially to 5,000 acres of rice land in an area where rice farming was the principal activity, *Smith* v. *Ark. Irrig. Co.,* 200 Ark. 1022, 142 S. W. 2d 509; in tax exemption cases, "public property used for public purposes" has been defined as meaning use by the public generally as distinguished from proprietary use, *Yoes* v. *City of Ft. Smith,* 207 Ark. 694, 182 S. W. 2d 683. We should have no difficulty in determining which purposes are public purposes.

I do not agree that the doctrine of noscitur a sociis, or ejusdem generis, the specific application of the maxim utilized by the majority, controls here. I do agree that, generally speaking, rules of statutory construction are applicable. But the maxim, or its specific application, is a rule of construction to be applied only when the legislative intent cannot be determined from the language of the statute itself. *Edwards* v. *Mayor and Council of Borough of Moonachie,* 3 N. J. 17, 68 A. 2d 744 (1949). The maxim should never be utilized to render general words meaningless because that would disregard the primary rule that effect should be given to every part of a statute, if legitimately possible, and that the words of a statute are to be taken according to their natural meaning. *Mason* v. *U. S.,* 260 U. S. 545, 43 S. Ct. 200, 67 L. Ed. 396 (1923); Annot., Ann. Cas. 1914C 305; Crawford, Statutory Construction 328, § 191 (1940); 2 Sutherland, Statutory Construction 405, § 4913 (1943); *Morgan* v. *State,* 208 Miss. 185, 44 So. 2d 45 (1950); *Crabb* v. *Zerbst,* 99 F. 2d 562 (5th Cir. 1938); *Edwards* v. *Mayor,* etc., supra; *United States* v. *Mescall,* 215 U. S. 26, 30 S. Ct. 19, 54 L. Ed. 77 (1909); *United States* v. *Alpers,* 338 U. S. 680, 70 S. Ct.

352, 94 L. Ed. 457 (1950). The rule is not applied when the context of the statute rebuts it. See Crawford, Statutory Construction 329, § 191 (1940); 2 Sutherland, Statutory Construction 407, § 4914 (1943).

After much deliberation, and with considerable reluctance, I have come to the conclusion that I must accept the majority view as to limitations on this clause only by reason of the ballot title. In this respect, I do not follow the exact line of reasoning of the majority because I do not take the language involved to be really ambiguous. Yet, I conclude that the general rules pertaining to statutory construction in this respect should not apply to an initiated constitutional amendment. The ballot title is all that a voter sees when he marks his ballot. I agree that the average voter who cast an affirmative vote on this amendment when it was proposed would have had no idea that he was voting to authorize a property tax to pay for some public improvement only remotely connected, if at all, with securing the location or encouraging the operation of factories, industries, river transportation and facilities therefor.

The importance of the ballot title on initiated measures has always been recognized in this state. When a petition for a constitutional amendment is filed, the exact title to be used must be submitted by the petitioner with the petition filed with the Secretary of State and the State Board of Election Commissioners, who, in turn, certify the title to the Secretary of State. Amendment 7, Constitution of Arkansas.

In keeping with the spirit of the initiative and referendum amendment, we have gone to great lengths to insure that no measure was presented to the voters under anything other than an intelligible, honest title without any misleading amplification, omission or fallacy. *Newton* v. *Hall,* 196 Ark. 929, 120 S. W. 2d 364, *Bailey* v. *Hall,* 198 Ark. 815, 131 S. W. 2d 635; *Sturdy* v. *Hall,* 204 Ark. 785, 164 S. W. 2d 884; *Washburn* v. *Hall,* 225 Ark. 868, 286 S. W. 2d 494. We early recognized the purpose of this title and its importance in

*Westbrook* v. *McDonald,* 184 Ark. 740, 43 S. W. 2d 356, 44 S. W. 2d 331, when we said:

> It is true that if one were to read the act itself even casually he would know that it had not been enacted that one might obtain a divorce in this state by proving a residence therein for ninety days only; but it is equally true that the great body of the electors, when called upon to vote for or against an act at the general election, will derive their information about it from the ballot title. This is the purpose of the title.

We have not hesitated to strike down as insufficient any ballot title that would mislead by omission of a material fact. *Shepard* v. *McDonald,* 189 Ark. 29, 70 S. W. 2d 566; *Westbrook* v. *McDonald,* supra. Of course, it is not necessary that the ballot title constitute a complete abstract or synopsis of the proposal, if it sufficiently though concisely apprises the voters of the general purposes of the proposed law. *Coleman* v. *Sherrill,* 189 Ark. 843, 75 S. W. 2d 248; *Leigh & Thomas* v. *Hall,* 232 Ark. 558, 339 S. W. 2d 104; *Sturdy* v. *Hall,* supra. The test seems to be whether the matter omitted would be misleading to the average voter. We held a title insufficient as misleading when it failed to disclose that proposed assistance to the aged and blind would be provided by a permanent general sales tax. *Walton* v. *McDonald,* 192 Ark. 1155, 97 S. W. 2d 81.

Our rule of statutory construction that resort be had to the title of an act to determine the legislative intent only when the act is ambiguous is based largely upon the premises that there is no constitutional requirement that an act have a title and that the title is not a part of the act. *Laprairie* v. *City of Hot Springs,* 124 Ark. 346, 187 S. W. 442; *Special School District No. 33* v. *Howard,* 124 Ark. 475, 187 S. W. 444.

Since there is a constitutional requirement that an initiated proposal for a constitutional amendment have a ballot title, and since the purpose of the ballot title is to inform the voter when he exercises his right of

suffrage, I would follow, in respect to the significance of the title, holdings in states whose constitutions require a legislative proposal to bear a title. Generally speaking, where there is a mandatory constitutional requirement that the subject of a statute be expressed in its title, the title limits the valid scope of the act and nothing can validly be included in its provisions which is not covered by a liberal construction of the title, except for means and provisions reasonably adopted to carry out and make effectual the purpose of the act. 82 C. J. S. 372, Statutes, § 220. On this basis, I agree that the "other public purpose" section should be limited.

Based upon this construction, I would find authority for the construction of a convention center. I agree, however, that it could also be justified as a means of advertising the city as a means of attracting and encouraging new industries.

I do not agree that the petition's ninth purpose is authorized by Amendment 18. It is quite true that the commissioners named under that amendment may make secured loans to *such* factories and industries as are secured through means provided by the amendment. Still, the ninth purpose in the petition is not limited to loans to those industries, but would permit "aid" in financing industries, without restriction. The scope of the amendment is not that broad. In my opinion, it does not authorize loans to just any industry. It certainly does not permit grants, rather than loans, as the word "aid" would imply. More significantly, while Amendment 18 does amend Article 12, Section 5, to permit a city's funds to be loaned, it does not eliminate the prohibition against donating these funds to a corporation. See *Luxora* v. *Jonesboro, L. C. & E. R. Co.*, 83 Ark. 275, 103 S. W. 605, 13 L. R. A. (n. s.) 157, 119 Am. St. R. 139. There is no exemption for nonprofit corporations. Furthermore, it would substitute the discretion and judgment of the officers and directors of the corporation for that of the commissioners. The commissioners could, by this device, delegate their responsibility and authority to these officers and directors. I do not believe that this was intended. Such a result

seems inconsistent with the majority opinion holding Section 5 of Ark. Stat. Ann. § 19-3105 (Repl. 1968) unconstitutional, with which I concur.